IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**KIMBERLY HUNT-BROWN**


**Plaintiff,**

**vs.**                                                                    **Civ. No. 23-cv-00782 WJ-KK**


**NEW MEXICO GENERAL SERVICES DEPARTMENT, and**

**VALERIE PAULK, EUNICE MOYA, JENNIFER MORFIN,**

**VANESSA LEBLANC AND NATALIE MARTINEZ,**

**In their individual and official capacities**

**Defendants.**


**SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE NEW MEXICO
HUMAN RIGHTS ACT AND THE FAMILY AND MEDICAL LEAVE ACT,**


### I.      Nature of the Action

COMES NOW Kimberly Hunt-Brown, Plaintiff, by and through her attorney of record,

Heather Burke to file this complaint for violations of the Family and Medical Leave Act 29

U.S.C. § 2601 ("FMLA," herein) and the New Mexico Human Rights Act, NMSA 1978 § 28-1-7

et seq ("NMHRA", herein),


### II.      Parties

1. Kimberly Hunt-Brown is a resident of Sandoval County, New Mexico and is an

   employee within the meaning of the FMLA, New Mexico Human Rights Act, NMSA

   1978 § 28-1-7 et seq and New Mexico Common Law.

1

2. Ms. Hunt-Browns is employed by the New Mexico General Services Department, of the State of New Mexico, which is located in Santa Fe County.

3. Valerie Palk, Eunice Moya and Natalie Martinez live and/or work in Santa Fe, NM in Santa Fe County.  They are employers within the meaning of the FMLA, New Mexico Human Rights Act, NMSA 1978 § 28-1-7 et seq, and New Mexico Common Law.

### III.    <u>Jurisdiction</u>

4. The New Mexico Human Rights Act, NMSA 1978 § 28-1-7 et seq, confers jurisdiction in the State of New Mexico, Santa Fe County, First Judicial District Court, where defendants do business.  All relevant events that form the causes of action in this litigation occurred within the State of New Mexico.

5. The Court has personal jurisdiction over Defendants because it was at all times herein alleged conducting business in Santa Fe County, New Mexico.

6. Defendants took the unlawful, retaliatory, and/or tortious acts herein alleged within this Judicial District and/or took wrongful acts that had effects in this Judicial District.

7. Venue is proper under NMSA 38-3-1

8. Venue in this Court is proper because the Defendant engaged in the unlawful, retaliatory, and/or other tortious conduct giving rise to this Complaint in Santa Fe County, New Mexico, which is within this Judicial District.

2

## IV.    Exhaustion of Administrative Procedures

9. Plaintiff timely filed 3 charges of discrimination with the New Mexico Human Rights Bureau, which were cross filed with the EEOC.  She satisfied all administrative requirements and received orders of non-determination on July 21, 25 and August 11, 2023, respectively, all which allows her 90 days to file her complaint in state district court.  This complaint is timely filed on August 15, 2023.

10. Plaintiff received an OND on April 10, 2024 which exhausted the amended facts and additional claims necessitating this First Amended Complaint.

11. Plaintiff received the OND for her most recent charge which was dated September 11, 2024.

## V.    Factual Background to This Litigation

12.  Ms. Hunt-Brown started employment for Defendants on or around May 19, 2014

13. Ms. Hunt-Brown suffers from Multiple Sclerosis and debilitating migraines.

14. Ms. Hunt-Brown has a telework accommodation in place as she is high risk for Covid complications.

15. Ms. Hunt-Brown has been granted Intermittent FMLA at GSD for the past five (5) years.

16. Valerie Paulk was hired at GSD on or around July 27, 2019, as Deputy State Purchasing Director.

17. Natalie Martinez is Ms. Hunt-Brown's direct Supervisor.  Defendant Martinez answers directly to Defendant Paulk.

18. Since Defendant Paulk started at SPD, she has treated Ms. Hunt-Brown differently than other employees, and has subjected her to increased scrutiny.

19. Defendant Paulk has openly stated to Plaintiff that she does not believe it is fair for other employees to have to cover work assignments for Ms. Hunt-Brown when she is out of the office on FMLA leave.

20. As a result, Ms. Hunt-Brown regularly returns to find that work has built up in her absence.

21. Defendant Paulk regularly criticizes and harasses Ms. Hunt-Brown for not timely completing her work, even when she has fallen behind because of her protected leave.

22. Defendant Paulk regularly criticizes Ms. Hunt-Brown for delays caused by the customer, although Ms. Hunt-Brown has no control over when a customer may or may not return things to her.

23. Defendant Paulk has threatened to revoke Ms. Hunt-Brown's telework accommodation because of her unsupported belief that Ms. Hunt-Brown is not working hard enough at home.

24. Defendants Martinez and Paulk subject Ms. Hunt-Brown to arduous requirements that they do not require of any other employee.

25. They require that Ms. Hunt-Brown be checking email and respond to each and every email communication, even general notices, within a one (1) hour time frame.

26. They require Ms. Hunt-Brown to send emails or text messages when she starts work, and if she has an appointment, both when she leaves work for the appointment and when she returns to work.

27. Defendants required Ms. Hunt-Brown to sign a release form for all medical information related to her FMLA leave.

28. This release states:

> I, (Employee Name), HEREBY AUTHORIZE
> (Clinician Name) to release to the New Mexico General Services
> Department medical information pertinent to the Family and Medical
> Leave Act ("FMLA") or non-FMLA medical leave requested in the
> attached document.
> To any licensed physician, other licensed practitioner, hospital, clinic or
> other medically related facility, or United States Veteran Administration:
> I authorize you to release to the New Mexico General Services
> Department the above-requested information to be used solely for the
> purpose of evaluating my request for FMLA or non-FMLA medical
> leave. This authorization shall be valid for a period 180 days after the
> date of my signature or earlier if revoked by my in writing to the New
> Mexico General Services Department. I hereby acknowledge that I have
> been informed of my right to receive a copy of this authorization
> request.

29. This form finishes by stating: "I further acknowledge that I have been informed that if the medical information contained herein is not released, my medical leave may be denied."

30. Plaintiff signed this release for her new FMLA year on December 15, 2022.

31. Ms. Hunt-Brown's 2022 FMLA year expired in December 2022.

32. Defendants notified Ms. Hunt-Brown of this, and her need to re-certify for another year of FMLA protection.

33. Her first 2023 FMLA physician form was dated 1/17/23, and signed 1/19/23, submitted by Plaintiff on January 25, 2023

34. Ms. Hunt-Brown endeavored to return her certification forms as soon as possible. However, she was delayed in doing so as her medical provider was out of the office with Covid.

35. On January 26, 2023, Defendants rejected Plaintiff's physician certification stating that "more information was needed" and "All that was stated was chronic condition."

36. As Ms. Hunt-Brown has Multiple Sclerosis and debilitating migraines, neither of which have cures, at no time was there a reasonable belief that Ms. Hunt-Brown would not qualify for another year of FMLA protection, or that she no longer had these conditions.

37. Some or all of Plaintiff's previously approved physician certification forms from past FMLA years did not include her specific medical diagnoses, and were accepted without question by Defendants.

38. Ms. Hunt-Brown dutifully complied with Defendants' request and asked her provider to fill the forms out again.

39. Ms. Hunt-Brown's need for leave continued, and at first she was told by HR employee Kelly Howley that she should continue to designate her leave as FMLA while she was getting certified, which is proper under the law.

40. Ms. Hunt-Brown continued to designate her leave as FMLA when she had flare ups.

41. On February 23, 2023, She submitted the second physician certification form filled out by her provider, signed on February 17, 2023, and with clear diagnosis on it.

42. On February 23, 2023, Human Resource Analyst Kelly Howley returned Plaintiff's certification form to her, stating:

It starts on the date that your physician adds on the Physician's Certification. Your physician did not log the start and end dates on the form.

43. Ms. Howley continued:

I am returning the Physician's Certification, so that you may have your physician include the dates, not to exceed 12 months. Please let me know if you have any questions.

44. The part of the form alleged to have not been filled out by Plaintiff's medical

provider is an inapplicable section regarding the medical provider referring Plaintiff

to a different health provider for additional treatment:



(6)    Due to the condition, the patient (☐ was / ☐ will be) **referred to other health care provider(s)** for evaluation or treatment(s).

State the nature of such treatments: *(e.g. cardiologist, physical therapy)* _____

Provide your **best estimate** of the beginning date_____ *(mm/dd/yyyy)* and end date _____ *(mm/dd/yyyy)* for the treatment(s).

Provide your **best estimate** of the duration of the treatment(s), including any period(s) of recovery *(e.g. 3 days/week)*

_____

(7)    Due to the condition, it is medically necessary for the employee to work a **reduced schedule.**

45. Plaintiff's FMLA year is not determined by her medical provider, and is based on the

date she first takes leave after giving notice of her need for leave.

46. On March 1, 2023, Plaintiff had a flare up of her medical conditions.  At 8:03am her

husband assisted her to text Defendants Paulk and Martinez saying "Waking with

nausea and vertigo.  Took meds. Plan to be in later and will let you know when I start

working.  FMLA"

47. Defendant Paulk replied "Kim was your FMLA approved" at 8:06am

48. When Plaintiff's condition did not improve, and in fact worsened, Plaintiff's husband

sent another text from plaintiff's phone saying "This is Joe, Kim's husband. She will

not be in today at all."

49. Defendants refused to designate Plaintiff's leave on March 1 as FMLA qualifying,

and marked the morning time as LWOP, and the afternoon time as AWOL.

50. GSD policy defines AWOL as "AWOL is unpaid and the employee does not accrue

annual or sick leave"

7

51. GSD Employees can be subject to "disciplinary action up to and including dismissal" for being AWOL.

52. Plaintiff lost benefits, leave accrual, and PERA by being marked AWOL and/or unpaid time.

53. On March 2, 2023, undersigned counsel sent a letter to Defendants, on behalf of Plaintiff, informing them that they were interfering with Plaintiff's right to FMLA.

54. Defendants took no discernable action to remedy this interference, and instead, inexplicably continued to refuse to certify Plaintiff's FMLA.

55. On March 29, 2023 Eunice Moya sent an email to undersigned counsel stating:

> As you represent Ms. Hunt-Brown, and her email dated March 23, 2023 regarding her FMLA status questions may relate to that representation, I am providing this response through your office.  We are happy provide further information.
> On February 23, 2023, I requested an updated physician statement. To date our office has not received an updated physician statement.

56. Over a month had passed, and they continued to deny Plaintiff FMLA leave.   They had received a letter telling them they were violating Plaintiff's FMLA rights, and Defendants still refused to certify Plaintiff's FMLA because they claimed that Plaintiff's doctor had to tell them when the FMLA year commenced.

57. Undersigned counsel responded:

> Hello Ms. Moya,
>
> FMLA periods are not determined by medical providers but are set by the employer.  Some employers, like GSD, use a rolling calendar, while others use a calendar year.  I know of no provision in the FMLA that contemplates, much less requires, a medical provider to tell you how to apply the FMLA year, because rolling calendars begin the first date FMLA leave is taken, and continue for 12 months from that date.  Ms. Hunt-Brown's certification tells you that she is requesting intermittent leave and her provider has told you the anticipated frequency and duration of any episodes.  This is all that the law requires from the

provider as far as dates or times for intermittent leave. You have had all of the information necessary to designate Ms. Hunt-Brown's leave for months, and yet have repeatedly refused to do so.  You knew that she was taking FMLA protected leave for the last 3 months, you could have started her rolling year at any time.  But you instead went back and retroactively changed it to not be FMLA protected leave, and invented a deficiency in her certification which is incorrect as a matter of law. GSD is illegally interfering with Ms. Hunt-Brown's federal rights by refusing to accept her complete certification, refusing to designate her leave, by denying her protected leave she is entitled to as a matter of law, by refusing to let her use annual leave she has earned for her episodes, and by marking her AWOL for leave that should be FMLA protected leave that you denied her.

58. The following day, March 30, Defendants sent undersigned counsel notice that they were certifying Plaintiff's FMLA.

59. Defendants impermissibly delayed certification of Plaintiff's FMLA for nearly 4 months.  They told her she could not take FMLA, they marked her AWOL for taking it, would not let her use accrued leave, and otherwise punished and discouraged her from using her federal rights.

60. On or around June 13, 2023, Defendant Martinez began requiring Plaintiff to respond to each and every comment in "track changes" documents.

61. On May 24, 2023, Plaintiff and another GSD employee were approved to attend a training conference for the National Association of State Procurement Officials (NASPO) in July 2023.

62. The cost of the airfare and hotel was fully paid for by NASPO, and Defendants only had to approve paid training time for the employees.

63.  Defendants stated that if Plaintiff "fell behind" on her work, they would revoke their training approval.

9

64. Plaintiff requested that Defendants define what constituted "falling behind" so that she could be aware of the conditions of her training approval.  Defendants did not respond or otherwise define this.

65. Defendants continued to assign Plaintiff work as fast as she completed it.  They even assigned her 5 additional "high-priority" assignments that had to be completed at the beginning of the new fiscal year.

66. On June 21, the other GSD employee communicated that she was no longer able to attend the training conference.

67. The following day, Defendant Martinez revoked Plaintiff's approved training time, allegedly "after reviewing her work assignments."

68. No allegation was made that Plaintiff had "fallen behind" or was otherwise not performing satisfactorily.

69. Defendant Martinez stated that Plaintiff could use annual leave to attend the training if she wished.

70. Defendants knew, or should have known, that Plaintiff did not have sufficient available annual leave to attend the training due to her need for FMLA leave.

71. Even had she had sufficient leave, Plaintiff should not be required to use annual leave to attend work related training.

72. Plaintiff would have professionally benefitted from this training as it would have provided required training hours for a professional certification that Plaintiff has been pursuing.

73. This professional certification would benefit Plaintiff's career, making her more competitive in the job market, and at a higher level of compensation.

10

74. In addition, while she was going to be in the area, Plaintiff had made plans to visit her mother who lives 3 hours from the conference location and who is in hospice care.

75. In November 2022, the Governor rescinded the statewide "Non-Mandatory Telework Policy"

76. GSD's Non-Mandatory Telework Policy 4.14 states "Requests for leave under the Family and Medical Leave Act (FMLA) or reasonable accommodations under the Americans with Disabilities Act, as amended, (ADA) **are not governed by this policy**. Such requests are governed by General Services Department's FMLA policy and ADA policy, respectively."

77. GSD "Disability Accommodations Policy" effective 5/2/2016, does not prohibit telework, and states "GSD makes determinations about reasonable accommodations on a case-by-case basis. Various factors, based on an individualized assessment, are considered in each situation."

78. On January 24, 2023, Plaintiff submitted a request for a reasonable accommodation to continue to telework due to her compromised immunity.

79. Plaintiff was granted a "trial" telework accommodation, after the rescission of the Non-Mandatory Telework Policy, from February 2, 2023 to August 2, 2023 in order "to evaluate whether Agency needs are being met with you teleworking or whether your requested accommodation may create undue hardship"

80. On or around July 27, 2023, Defendants requested to set an interactive process meeting ("IPM") with Plaintiff about her accommodation. Defendants did not request any update to Plaintiff's condition or request for accommodation.

81. On July 28, 2023, after Plaintiff informed her that Plaintiff's attorney wished to attend the IPM, Defendant Moya sent Plaintiff an email stating

The purpose of today's meeting was to have an interactive discussion regarding reasonable accommodations within your office space at the Joseph Montoya Building. On January 30, 2023, you were provided a trial period beginning on February 2, 2023 and ending August 2, 2023. GSD is unable to accommodate your telework schedule due to the rescission of the Non-Mandatory Telework Policy. You accepted a position located in Santa Fe, NM, therefore, you will be required to report to your office located at 1100 S. St. Francis Dr. on Thursday, August 3, 2023.

82. Defendants had already decided to deny Plaintiff's accommodation before they even conducted an IPM which is wholly contrary to the intent of an IPM.

83. This meeting was set for 2pm on July 31, 2023 so that undersigned counsel could attend.

84. At this meeting, Defendant Moya reiterated her position that the rescission of telework policy prevented any telework accommodations. There was nothing interactive about this meeting.

85. She also stated that GSD "does not recognize telework as a reasonable accommodation."

86. Defendants did not state that there was any issue with Plaintiff's work performance, nor did they state that anything about Plaintiff's telework accommodation had created an "undue hardship" on the General Services Department.

87. In the meeting, Defendants unilaterally announced that they would be willing to provide the following accommodations:

- Allow you to have your office door closed during working hours.

- Allow you to attend meetings via Teams from your office.

- Provide an alternative work schedule.

88. Nothing about this meeting seemed intended to open up a good faith dialogue about Plaintiff's disabilities and how to enable her to perform her work duties with that in mind.

89. Plaintiff brought up the fact that her migraines did not always last a full day but that sometimes the effects of them and/or her medications did not allow her to drive, but would still allow her to work. She stated that her medical provider believed that the ability to work from home "as needed" after a flare up would be a reasonable accommodation of this disability.

90. Defendants abjectly refused to consider even an occasional telework accommodation.

91. As Defendants had never requested updated paperwork, Plaintiff submitted the formal request for accommodation requesting to telework "as tolerated" on days she had a flare up of her disabling conditions.

92. Defendants denied this request on August 4, 2023 stating:

> Your accommodation request was specifically to allow you take home your laptop computer and allow you to telework at the onset of a migraine headache. In your request, you stated that this accommodation will allow you to take less time off from work and will help you keep your work current. In addition, it will keep you from imperiling yourself and others if I have to try to drive yourself from Rio Rancho to Santa Fe immediately following a migraine when you are still suffering residual effects but have to report to the office.

93. Their reason for denial of this "as needed" telework accommodation request was "You were notified that we were unable to accommodate your telework schedule due to the rescission of the Non-Mandatory Telework Policy."

94. On August 17, 2023, Plaintiff applied for the SPD Procurement Construction Unit Supervisor position (GSD #2954.)

95. Plaintiff was interviewed for this position

13

96. Plaintiff was not selected for this position.

97. On August 23, 2023, Plaintiff applied for SPD Deputy Director position (GSD#2961)

98. Plaintiff was interviewed for this position

99. Plaintiff was not offered this position

100. On December 18, 2023, Plaintiff applied for the Procurement Specialist Bureau Chief position (GSD #10106555)

101. Plaintiff was interviewed for this position

102. Plaintiff was not offered this position

103. On February 15, 2024, Plaintiff applied for the IT Procurement Specialist position (GSD #3018).

104. Plaintiff was interviewed for this position.

105. Plaintiff was not selected for this position.

106. On March 22, 2024, Plaintiff applied for the GSD IT Procurement Specialist (GSD #2972)

107. Plaintiff was interviewed for this position.

108. Instead of promoting Plaintiff, Defendants chose an external candidate with no State of New Mexico procurement experience.

109. Despite being qualified for these positions, and being interviewed for them, Plaintiff was not offered any of the five promotional positions that she applied for.

110. On January 24, 2024, Plaintiff's 2024 FMLA year was approved.

111. On March 11, 2024, Jennifer Morfin sent the following email to Plaintiff:

Polite reminder,  Per your 2024 Intermittent FMLA paperwork and per your medical provider you are authorized up to four (4) days a month of FMLA use. I have attached the FMLA paperwork from your provider and your FMLA application for your reference. Any use of FMLA leave utilized beyond the four (4) days a month would need be used as personal

leave; annual leave, sick leave, leave without pay etc. You will be required to obtain prior authorization from your supervisor for such leave requests. Should you believe that you may need to exceed the days a month for FMLA use you will need to submit a new FMLA application with supporting documentation from your provider with updated information.

112.    On March 18, 2024, Plaintiff had a flare up of her FMLA qualifying and covered condition, and gave notice of her need for FMLA leave via text message at 5:49am.

113.    Her manager Vanessa LeBlanc, responded "You have exhausted your FMLA as of March 13.  Today will not be covered by FMLA"

114.    Plaintiff requested an accounting of her FMLA entitlement and was provided an accounting of 76 hours of FMLA used, out of her 480-hour entitlement.

115.    Defendant Moya stated in an email to Plaintiff on March 19, 2024:

As mentioned below, you have not exhausted your 480 hours of intermittent leave. However, according to your medical certification you are allotted up to four days of intermittent FMLA per month, that you exhausted.

116.    On March 22, 2024, Plaintiff sent an email to Defendants Morfin and Moya letting them know that she had made an appointment to get recertification but that the first available appointment with her provider was not until April 29, 2024.  She received no response.

117.    Defendants Leblanc, Morfin and Moya continued to deny Plaintiff FMLA leave on March 20, 22, 25 and 26th for absences which they knew were related to her FMLA qualifying conditions.

118.    In April, Defendants denied Plaintiff FMLA protected leave for April 19, 29, and 30th.

119.    The leave requested on April 29th was an appointment made explicitly to obtain Defendants requested recertification of FMLA, yet they denied her FMLA leave for that appointment.

120.    By unlawfully restricting Plaintiff to only four one day FMLA absences a month, Defendants are restricting Plaintiff to only use a maximum of 384 hours a year, denying her the full protection of 480 hours as required by law.

121.    Defendants' failure to reasonably accommodate Plaintiff has so far resulted in making her take an estimated 183 hours of FMLA leave, so far, which she would otherwise have been able to work, were she allowed to telework on an intermittent basis.

122.    This denial of reasonable accommodation has required Plaintiff to take an estimated 50 unnecessary hours of FMLA leave during the 2024 FMLA year when she was otherwise able to work, but not to make the commute between her home and work.

123.    Plaintiff sought leave donations and was received approximately 35.62 hours of donated leave, effective March 15, 2024.

124.    When Plaintiff attempted to use this donated leave for her FMLA related absences that Defendants were refusing to designate as FMLA, she was told that she could not use donated leave for those absences, and that donated leave could only be used for FMLA covered absences.

125.    Plaintiff requested the GSD policy requiring this, and was referred to the NMAC code regarding Donations of Leave.  The NMAC does not state any requirements that donated leave can only be used in conjunction with FMLA leave.

126. It is unclear whether Defendants actually have such a policy, or are just retaliating against Plaintiff by denying her use of the donated leave.

127. However, by denying Plaintiff FMLA leave, Defendants forced Plaintiff to take unpaid leave for absences which would otherwise have been covered by donated leave.

128. On June 20, 2024, Plaintiff applied for SPD IT Procurement Specialist II (GSD #49191).

129. Plaintiff was given only 2 hours' notice for the interview for this position, and was in her "casual Friday" clothes.

130. Again, Plaintiff was not offered this job, and it is believed to have been given to a much younger, less experienced and qualified employee.

131. Plaintiff has applied for at least 6 promotional positions for Defendants and been passed over for all of them.

132. On or around September 3, 2024, Plaintiff discussed flexing her schedule for September 6 with Defendant LeBlanc which would allow Plaintiff to go to a medical appointment without having to take unpaid leave.  Plaintiff told Defendant LeBlanc that she would send an email when she arrived at work, when she took lunch, when she came back from lunch and when she left for the day so that it would be clear.

133. Plaintiff sent a follow-up email to Defendant LeBlanc on September 5th at 4:19pm to confirm the plan to flex her time

134. On September 6, Plaintiff started her work day at 7:31am, went to lunch at 12:37pm, returned from lunch at 1:06pm, and left for the day at 3:39pm.  She sent an email to Defendant LeBlanc at each of these times as agreed.

17

135. However, on Wednesday September 11, Defendant LeBlanc sent Plaintiff an email stating that she had been out of the office the 6th through the 9th and therefore hadn't been in the office to "pre-approve" the flexing of time.

136. Defendant LeBlanc told Plaintiff that because this flex-time had allegedly not been pre-approved, Plaintiff would have to take leave for her medical appoint, despite the fact that Plaintiff had worked a full work day on the date in question.

137. Defendant LeBlanc refused to pay Plaintiff for time she actually worked on September 6, 2024.

138. On information and belief, Defendant LeBlanc flexes her work time every day.

139. As a direct result of Defendants wrongful and unlawful actions, Plaintiff has suffered, and continues to suffer, damages.

**COUNT I:**
**VIOLATION OF THE NMHRA:**
**SERIOUS MEDICAL CONDITION DISCRIMINATION**
(Defendants GSD, Moya, Paulk and Martinez)

140. Plaintiff reincorporates and realleges the paragraphs above as though set forth fully herein.

141. The New Mexico Human Rights Act (NMHRA) NMSA 1978 § 28-1-7(A) states that it is an unlawful discriminatory practice for "an employer, unless based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified

18

because of race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition"

142.   Plaintiff's Multiple Sclerosis and Migraines qualify as disabilities and/or serious medical conditions under the HRA.

143.   Defendants discriminated against Plaintiff by refusing to have anyone cover her work while she was out and then harassing her for not having her assignments completed "on time."

144.   Defendants discriminated against Plaintiff by placing her under greater scrutiny than her peers.

145.   Defendants discriminated against Plaintiff for her accommodation by requiring her to work on days that the rest of office was closed due to inclement weather.

146.   Defendants discriminated against Plaintiff by delaying her re-certification for FMLA by imposing unlawful requirements in order for her certification to be considered valid.

147.   Defendants discriminated against Plaintiff by refusing to let her use her accrued paid leave for her medical absences.

148.   Defendants discriminated against Plaintiff by marking her "AWOL" when Plaintiff's husband notified them of her incapacity, because it was not Plaintiff herself sending the text.

149.   Defendants discriminated against Plaintiff by refusing to recertify her FMLA until she had retained an attorney

150.    Defendants increased scrutiny, micromanagement, and unlawful delay in FMLA recertification caused more serious, frequent and severe flare ups of Plaintiffs medical conditions.

151.    Defendants discriminated against Plaintiff by threatening to revoke permission for her to attend a national conference if she "fell behind again." Plaintiff is allegedly "behind" because of her absences from work.

152.    Defendants discriminated against Plaintiff by telling her that they could "Separate her Without Prejudice" if her already existing disability made it impossible to perform her work after refusing to extend her telework accommodation.

153.    The existence of the "Separation Without Prejudice" framework is, itself, a violation of the NMHRA and impermissibly singles disabled employees out for termination without cause.

154.    Defendants retaliated against Plaintiff by assigning her extra work to ensure that she "falls behind."

155.    Defendants retaliated against Plaintiff for filing her HRB charge by revoking her approved training time to attend the NASPO training conference in July 2023.

156.    Defendants have discriminated and retaliated against Plaintiff by failing to promote her at least 6 times.

157.    Defendants have discriminated and retaliated against Plaintiff by artificially restricting her right to take protected FMLA leave for her qualifying absences.

158.    Defendants sudden and unlawfully strict application of Plaintiff's provider's estimate of Plaintiff's need for FMLA leave demonstrates their resentment of and animus towards Plaintiff's disabilities.

20

159.    Defendants have discriminated and retaliated against Plaintiff by denying her the use of donated leave, forcing her to take unpaid time.

160.    Defendants retaliated against Plaintiff by refusing to pay her for time she worked because they claimed they had not "pre-approved" that time.

161.    As a result of Defendants' illegal discrimination, Plaintiff suffered, and continues to suffer, damages.

**COUNT II:**
**VIOLATION OF THE NMHRA:**
**FAILURE TO ACCOMMODATE**
(Defendants GSD, Moya, Paulk and Martinez)

162.    Plaintiff reincorporates and realleges the paragraphs above as though set forth fully herein.

163.    The New Mexico Human Rights Act (NMHRA) NMSA 1978 § 28-1-7(J) makes it "an unlawful discriminatory practice for any employer to refuse or fail to accommodate a person's physical or mental disability or serious medical condition, unless such accommodation is unreasonable or an undue hardship."

164.    Telework would allow Plaintiff to perform the essential functions of her position when her disabilities prevent her from being able to work on site.

165.    Defendants failed to accommodate Plaintiff in violation of the NMHRA when they refused to extend her full time telework accommodation because they "were unable to accommodate your telework schedule due to the rescission of the Non-Mandatory Telework Policy."

21

166.   Defendants failed to accommodate Plaintiff's request for occasional or as-needed telework in violation of the NMHRA as an accommodation because they "were unable to accommodate your telework schedule due to the rescission of the Non-Mandatory Telework Policy."

167.   GSD's Non-Mandatory Telework Policy specifically recognizes "**Requests for** leave under the Family and Medical Leave Act (FMLA) or **reasonable accommodations under the Americans with Disabilities Act**, as amended, (ADA) **are not governed by this policy**. Such requests are governed by General Services Department's FMLA policy and ADA policy, respectively." (emphasis added)

168.   Accommodations which were not governed by a policy also cannot be revoked by the rescission of a policy that never governed them.

169.   Defendants discriminated against Plaintiff by failing to accommodate her disability solely because they did not have a telework policy for non-disabled workers.

170.   Defendant Moya stated that because GSD would not accommodate Plaintiff's request to occasionally telework, Plaintiff would have to use her leave and/or FMLA leave during periods when the reasonable accommodation of telework would have allowed Plaintiff to perform the essential functions of her position.

171.   Requiring an employee to take additional and unnecessary leave from work by denying a reasonable accommodation which would otherwise enable them to work is a violation of the NMHRA.

172.    Defendant Moya went so far as to state that when Plaintiff used up her leave and/or could otherwise not be physically present at the office in Santa Fe, NM, that Defendants would "separate her without prejudice"

173.    NMAC 1.7.10.13(B) "Separation Without Prejudice" requires:

 Employees who have suffered an illness or injury that is not compensable under the workers' compensation act and are unable to perform the essential functions of their pre-injury/pre-illness position, with or without reasonable accommodation, as a result of the physical or mental disability created by the non job-related injury or illness shall be separated from the service without prejudice provided:
   (1)    all efforts to reasonably accommodate the medical restrictions of the employee have been made and documented;

174.    This provision cannot be lawfully used to terminate employees with existing disabilities just because Defendants no longer wish to accommodate their disabilities.

175.    Defendants made no good faith efforts to understand or to accommodate Plaintiff's medical restrictions and made unilateral decisions about what they were willing to do, without regard for whether it would actually assist Plaintiff in the performance of her duties.

176.    Defendants' failure to accommodate Plaintiff requires her to take significant additional time off and to use FMLA leave to cover time she would otherwise be able to work with the reasonable accommodation of occasional telework.

177.    As a result of Defendants' failure to accommodate, Plaintiff has suffered, and continues to suffer, damages.

23

## COUNT III: VIOLATION OF THE FMLA: INTERFERENCE

(Defendants Moya, Paulk and Martinez)

178. Plaintiff reincorporates and realleges the paragraphs above as though set forth fully herein.

179. Defendants Moya, Paulk and Martinez are employers under the FMLA and "act, directly or indirectly, in the interest of an employer to any of the employees of such employer"

180. Defendants Moya, Paulk and Martinez are employers under the FMLA and have one or more of the following responsibilities: "the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records."

181. 29 C.F.R. § 825.220 "An employer is prohibited from interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the Act."

182. 29 C.F.R. § 825.300(b)(1) requires "when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days…. Employee eligibility is determined (and notice must be provided) at the commencement of the first instance of leave for each FMLA-qualifying reason in the applicable 12-month period."

183. 29 C.F.R. § 825.220 "Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave."

24

184.    29 C.F.R. § 825.306 Content of medical certification for leave taken because of an employee's own serious health condition or the serious health condition of a family member.

    a.   *Required information.* When leave is taken because of an employee's own serious health condition, or the serious health condition of a family member, an employer may require an employee to obtain a medical certification from a health care provider that sets forth the following information:

        1.   The name, address, telephone number, and fax number of the health care provider and type of medical practice/specialization;

        2.   The approximate date on which the serious health condition commenced, and its probable duration;

        3.   A statement or description of appropriate medical facts regarding the patient's health condition for which FMLA leave is requested. The medical facts must be sufficient to support the need for leave. Such medical facts may include information on symptoms, diagnosis, hospitalization, doctor visits, whether medication has been prescribed, any referrals for evaluation or treatment (physical therapy, for example), or any other regimen of continuing treatment;

        4.   If the employee is the patient, information sufficient to establish that the employee cannot perform the essential functions of the employee's job as well as the nature of any other work restrictions, and the likely duration of such inability (*see* § 825.123(b) and (c));

        7.   If an employee requests leave on an intermittent or reduced schedule basis for planned medical treatment of the employee's or a covered family member's serious health condition, information sufficient to establish the medical necessity for such intermittent or reduced schedule leave and **an estimate of the dates and duration of such treatments and any periods of recovery**;  (emphasis added)

185.    29 C.F.R. § 825.306(E) While an employee may choose to comply with the certification requirement by providing the employer with an authorization, release, or waiver allowing the employer to communicate directly with the health care provider of the employee or his or her covered family member, **the employee may not be required to provide such an authorization, release, or waiver**. (emphasis added)

186.   29 C.F.R. § 825.301(d) Retroactive designation. If an employer does not designate leave as required by § 825.300, the employer may retroactively designate leave as FMLA leave with appropriate notice to the employee as required by § 825.300 **provided that the employer's failure to timely designate leave does not cause harm or injury to the employee**. In all cases where leave would qualify for FMLA protections, an employer and an employee can mutually agree that leave be retroactively designated as FMLA leave. (emphasis added)

187.   29 C.F.R. § 825.301 (e) Remedies. If an employer's failure to timely designate leave in accordance with § 825.300 causes the employee to suffer harm, it may constitute an interference with, restraint of, or denial of the exercise of an employee's FMLA rights. An employer may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered.

188.   Defendant Moya interfered with Plaintiff's federal rights by requiring her to sign a medical release in order to be certified for FMLA, and threatening to deny this leave if she refused.

189.   Defendants Moya and Palk interfered with Plaintiff's federal right to FMLA when they delayed recertification of her FMLA leave by claiming it was Plaintiff's doctor who had to state when Plaintiff's FMLA year began.

190.   Defendants Moya, Martinez and Palk interfered with Plaintiff's federal right to FMLA when they refused to designate her leave as FMLA covered, and instead

marked her AWOL when she was unable to work because of her FMLA qualifying condition.

191. Defendants Moya and Palk interfered with Plaintiff's federal right to FMLA by delaying re-certification of her leave, which unlawfully discouraged Plaintiff from taking protected leave she otherwise would have taken.

192. Defendants Moya and Palk interfered with Plaintiff's federal right to FMLA by refusing to timely recertify Plaintiff's FMLA.

193. Defendant Moya interfered with Plaintiff's federal right to FMLA by denying her reasonable accommodation and stating that she could take FMLA leave instead of being accommodated.

194. FMLA leave is not a substitute for an accommodation or to be used by the employer in lieu of providing a reasonable accommodation.

195. Plaintiff was re-certified for FMLA on January 24, 2024 at which time she was entitled to 480 hours of leave over the next 12 months.

196. Defendants Morfin, Moya, Martinez and LeBlanc began unlawfully interfering with Plaintiffs federal right to FMLA on March 11, 2024, when they gave her the "polite" notice that they were strictly construing her medical provider's estimated frequency of Plaintiff's need for leave, effective immediately.

197. Neither Defendants, nor Plaintiff's medical provider, control the amount of leave that Plaintiff is entitled to under the FMLA.

198. FMLA Form WH-380-E specifically asks a medical provider to "Provide your **best estimate** of how often (frequency) and how long (duration) the episodes of incapacity will likely last."

27

199.    The word estimate[1] means a) to judge tentatively or approximately the value, worth, or significance of; b) to determine roughly the size, extent, or nature of.

200.    The adverb likely means in all probability: probably[2]

201.    Defendants Morfin, Moya and LeBlanc interfered with Plaintiff's federal right to FMLA by restricting the number of hours of leave she could use per month.

202.    Defendants Morfin, Moya, Martinez and LeBlanc's monthly limitation of Plaintiff's FMLA protection interferes with her federal right by limiting her to only 384 hours a year.

203.    29 C.F.R. § 825.308(c)(2) allows an employer to seek recertification when an employee starts using more leave and it appears that circumstances have changed significantly.

204.    29 C.F.R. § 825.308(d) requires "Timing. The employee must provide the requested recertification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee s diligent, good faith efforts."

205.    Defendants Morfin, Moya and LeBlanc interfered with Plaintiff's federal right to FMLA by beginning denying her leave only 6 days after (arguably) giving notice that she needed to get a new certification from her medical provider.

206.    Plaintiff sought, and received leave donations to help pay for some of her time out of the office due to her medical conditions.

---

[1] https://www.merriam-webster.com/dictionary/estimate#dictionary-entry-1
[2] https://www.merriam-webster.com/dictionary/likely

207.    Defendants Morfin, Moya, Martinez and LeBlanc refused to let Plaintiff use the donated time for the absences that they were denying her FMLA leave, telling her that the donated leave could only be used in conjunction with FMLA, not with the other leave types they were requiring her to use instead of FMLA for her FMLA qualifying absences.

208.    Defendants forced Plaintiff to use any accrued leave or take leave without pay for the absences which were for her FMLA qualifying conditions, and for which she would have been able to use donated leave.

209.    Defendants require prior approval for Plaintiff to be approved for this leave which intentionally restricts it from being used for the unforeseeable flare-ups of Plaintiff's conditions.

210.    As a result of Defendants interference with her federal right to FMLA, Plaintiff suffered, and continues to suffer, damages.

### COUNT IV: VIOLATION OF THE NMHRA:
### AGE DISCRIMINATION
(Defendant GSD)

211.    Plaintiff reincorporates and realleges the paragraphs above as though set forth fully herein.

212.    The New Mexico Human Rights Act (NMHRA) NMSA 1978 § 28-1-7(A) states that it is an unlawful discriminatory practice for "an employer, unless based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified

because of race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition"

213. Plaintiff is 63 years of age.

214. On June 20, 2024, Plaintiff applied for SPD IT Procurement Specialist II (GSD #49191).

215. Plaintiff was not offered this promotion, and it is believed to have been given to a much younger, less experienced and less qualified employee.

216. On information and belief, all of the individuals who have been selected for positions that Plaintiff applied to have been younger than she.

217. As a direct result of Defendants wrongful and unlawful actions, Plaintiff has suffered, and continues to suffer, damages.

## COUNT V: VIOLATION OF NMSA §§ 50-4-20 "NEW MEXICO MINIMUM WAGE ACT" (Defendants GSD, Martinez, LeBlanc)

218. Plaintiff incorporates and realleges the paragraph above

219. Defendants are employers within the meaning of the NMMWA

220. At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of the NMMWA.

221. Plaintiff worked a full 8-hours on September 6, 2024.

222. Defendants refused to pay Plaintiff for all her hours worked on September 6, 2024.

223. Defendants' failure to pay Plaintiff for all her hours worked was in violation of the NMMWA.

224. Plaintiff suffered, and continues to suffer, damages from Defendants violation of the NMMWA.

225. Defendants are liable for the hours that Plaintiff worked without being paid, as well as additional statutory damages, including interest and attorney's fees and costs.

## PRAYER FOR RELIEF

226. Ms. Hunt-Brown respectfully requests:

    a. A trial by jury on all issues so triable;

    b. Judgement against Defendant;

    c. Statutory Damages under the NMHRA;

    d. Statutory Damages under the FMLA;

    e. Compensatory Damages;

    f. Liquidated Damages;

    g. Injunctive relief;

    h. Any other damages available to Plaintiff;

    i. Attorney's fees and costs;

    j. Pre and post judgement interest;

    k. Any other relief as may be deemed just and equitable.

Respectfully Submitted.

Heather Burke
Attorney at Law
1000 Cordova Place #24
Santa Fe, NM 87505
(505) 428-9424
heather@hburkelaw.com