## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**KIMBERLY HUNT-BROWN,**

    **Plaintiff,**

**v.**                          **Case No. 1:23-cv-00782 SMD-KK**

**NEW MEXICO GENERAL SERVICES DEPARTMENT,**
**and VALERIE PAULK, EUNICE MOYA, JENNIFER**
**MORFIN, VANESSA LEBLANC, and NATALIE MARTINEZ**
**In their individual and official capacities,**

    **Defendants.**

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, by and through their counsel, Jackson Loman Downey & Stevens-Block, P.C. (Eric Loman and Sarah Downey) move the Court for summary judgment as follows:

### Introduction

Plaintiff is a procurement agent in General Service Department's ("GSD") State Purchasing Division ("SPD"). Her job requires her to draft and revise contracts on behalf of State agencies. The individually named Defendants are GSD managers and coworkers who have interacted with Plaintiff in different capacities.

Since 2017, Plaintiff has been taking intermittent leave pursuant to the Family Medical Leave Act ("FMLA"). Plaintiff occasionally reports a flare up of symptoms related to multiple sclerosis or chronic migraines. It is not uncommon for Plaintiff to take one or more days off per week related to her FMLA-approved condition.

Pursuant to FMLA and GSD policy, Plaintiff is required to apply and recertify for FMLA leave annually. Plaintiff claims that in 2023 and 2024 Defendants interfered with her FMLA

benefits by delaying her FMLA approval, although in both years her FMLA was ultimately approved and she was permitted to take off as many days as requested with no consequence.

Plaintiff claims she not been promoted in violation of the New Mexico Human Rights Act ("HRA"), alleging discrimination based on her age and medical condition. She claims another HRA violation for not being allowed to work from home. Plaintiff claims she has been subjected to a hostile work environment by her current and past two supervisors. Finally, Plaintiff claims a violation of the New Mexico Minimum Wage Act, alleging she was not paid for approximately 1.5 hours of work on a single day. There has been no adverse employment action. Plaintiff has never been disciplined, suspended, demoted or placed on a performance improvement plan. She is currently employed by GSD and takes intermittent FMLA leave as she requests it. As discussed below, Plaintiff's claims should be dismissed.[1]

## Legal Standard

Summary judgment is appropriate where the moving party is entitled to judgment as a matter of law and the material facts are undisputed. See Fed. R. Civ. P. 56(a). The purpose of summary judgment is to terminate claims that are factually unsupported. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "[A] movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 232 (1986). "Such a movant may make its prima facie demonstration [for summary judgment] simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.*

---

[1] This Motion is opposed. Plaintiff has agreed the exhibits to this Motion may exceed the page limit set forth in D.N.M.LR-Civ 10.5.

## **Statement of Undisputed Material Facts**

1. **Background and Work Environment:** When Plaintiff applied to work at GSD in 2014, she was living in Santa Fe. See Deposition of Kimberly Hunt-Brown, attached as Exhibit A, p. 15:5-14.  Approximately one year later, Plaintiff chose to move to Rio Rancho and commute to work in Santa Fe. *Id.* p. 17:7-17.  Plaintiff first requested intermittent FMLA leave from GSD in approximately 2017. Ex. A, p. 30:4-7.  Prior to the 2020 COVID pandemic, Plaintiff never worked remotely for GSD. Ex. A, p. 17:18-23.

2. Defendant Natalie Martinez became Plaintiff's direct supervisor in the Spring of 2020, just as State employees began working from home due to the COVID pandemic. Ex. A, p. 37:12- 38:5.

3. During the COVID-related telework period, Ms. Martinez started weekly progress meetings with Plaintiff because of a concern Plaintiff's workload was not moving along as quickly as it should. Ex. A, p. 45:4-20.

4. For approximately three months in the Summer of 2022, Ms. Martinez took an extended leave of absence. Ms. Martinez's superior, Defendant Valerie Paulk acted as Plaintiff's supervisor during that period and continued the weekly progress meetings with Plaintiff. Ex.A, p. 51:17 – 52:7.

5. Plaintiff claims she is placed under increased scrutiny and micromanaged because her supervisors (over a period of time Natalie Martinez, Valerie Paulk, and currently Vanessa Leblanc) have maintained the weekly progress meetings with Plaintiff to go over her pending assignments. Ex. A, p. 125:20 – 127:7.

6. Plaintiff found the meetings to be sometimes helpful and professional in tone.  Ex. A, 50:15-18; 52:8-17.

7.   Plaintiff recalls one meeting where things got "a little heated," but noted that can happen in "any meeting."  Ex. A, p. 52:12- 53:7. Plaintiff does not recall any other instance in which the tone of a meeting with her supervisors bothered her. Ex. A, p. 54:2-13; 20-23.

8.   Neither Ms. Martinez nor Ms. Paulk ever insulted Plaintiff or called her names.  They "never engaged in that type of behavior with [Plaintiff]" and were professional at all times. Ex. A, p. 54:24- 55:9; 56:3- 57:5.

9.   Defendant Vanessa Leblanc has been Plaintiff's direct supervisor since approximately February 2024.  Plaintiff feels Ms. Leblanc is sometimes less friendly to Plaintiff than others in the office, but cannot provide any examples of Ms. Leblanc being hostile to her.  Ex. A, p. 123:19- 124:22.

10. Plaintiff once returned to work after being out for an extended illness and recalls her managers wanted her to finish the work that had gotten backed up while she was out. Plaintiff was not disciplined or reprimanded for the backlog of work, but considers this an example of hostility in the workplace.  Ex. A, p. 129:24- 130:15.

11. Plaintiff does not claim anyone other than Natalie Martinez, Valerie Paulk and Vanessa Leblanc have ever done anything to create a hostile work environment. Ex. A, p. 130:16-20.

12. Plaintiff has never been disciplined, suspended, demoted or terminated by GSD. Ex. A, p. 127:8-16.

13. **Plaintiff's 2023 FMLA Renewal:** Plaintiff's intermittent FMLA leave must be recertified on an annual basis. Ex. A, p. 64:4-11.  Plaintiff's FMLA certification for 2022 expired on December 13, 2022. *Id.*, p. 68:4-13.  Beginning in December 2022, Plaintiff worked with a human resources employee, Kelly Howley, to recertify her FMLA benefits for 2023.  Ex. A, p. 64:15-24.

14. After Plaintiff submitted the FMLA forms to Ms. Howley, Ms. Howley returned them to Plaintiff, telling her additional information was needed from Plaintiff's medical provider. Ex. A, p. 65: 4-21. Around that same time, Plaintiff's medical provider was out of the office for approximately one month for an illness of her own.  The absence caused additional delay in submitting a revised certification to GSD, which was no fault of GSD. Ex. A, p. 66:6 – 67:8.

15. While Plaintiff and GSD worked together to get her FMLA leave recertified for that year, Plaintiff continued calling in sick as needed.  Because her FMLA had not yet been recertified, Plaintiff's time on those days would be coded as "Leave Without Pay." Ex. A, p. 68: 4 – 69: 3.

16. On March 30, 2023, GSD approved Plaintiff's request to take intermittent FMLA and she was approved for the year. Ex. A, p. 69:9-11. GSD retroactively applied Plaintiff's FMLA approval, such that her missed days were recoded from "Leave Without Pay" to FMLA leave. Ex. A, p. 72:23-74:6.

17. That retroactive application simply changed a number of Plaintiff's missed time from "Leave Without Pay" to unpaid FMLA leave, resulting in no lost wages or benefits. Ex. A. p. 74:2-25.

18. **Plaintiff's 2024 FMLA Renewal:** In the beginning of 2024, Plaintiff sought to recertify her FMLA leave for the upcoming year.  Ex. A, p. 130:23-131:3.

19. The certification provided by Plaintiff's medical provider indicated Plaintiff was estimated to have as many as 4 episodes per month, which GSD understood to mean she might miss up to 4 days per month.  As such, when she called in for the fifth time in a month, GSD told her she was not approved for additional FMLA leave, and that time was coded instead as "Leave Without Pay-Authorized".  Ex. A, p. 131:20 – 132:8; 139:21-23.

20. Defendant Jennifer Morfin, a GSD human resources representative, told Plaintiff if she wanted to take more than four days per month of FMLA leave, she would just need to get an updated certification from her medical provider.  Ex. A, p. 132:17-133:1. Ms. Morfin later sent Plaintiff a 'polite reminder' to update her medical certification and provided the necessary documents. Ex. A, p. 134:12-21.

21. Plaintiff provided an updated certification from her provider stating she might have up to 31 episodes per month. GSD accepted the certification and approved Plaintiff for intermittent FMLA leave up to 31 days per month. Ex. A, p. 135:19 – 136:21. Prior to that new certification, Plaintiff would take time off as needed and it was coded as Leave Without Pay, and since then Plaintiff has had no issue taking as much FMLA leave as she requests.  Ex. A, p. 137:14-23, p. 139:14-18.

22. Leave Without Pay-Authorized and FMLA leave are both unpaid leave.  Ex. A, p. 71:22-23.

23. **Plaintiff's Request To Telework:**  At the end of 2022, the Governor issued orders rescinding the COVID telework orders and requiring State employees to return to the office by February 2, 2023. Ex. A, p. 57:6-19; 58:12-14.

24. Plaintiff submitted a formal request to continue teleworking as a reasonable accommodation, citing a particular vulnerability to COVID.  Ex. A, p. 59:11-23. Plaintiff was approved to continue teleworking until August 2, 2023.

25. As State employees transitioned back to working in the office, a number of other GSD employees made similar requests and were also permitted to continue teleworking for a trial period. However, no other employee was permitted to telework longer than Plaintiff. In other words,

Plaintiff received the longest extension and was the last one to return to the office. Ex. A, p. 63:16-64:3.

26. As Plaintiff's extension to telework until August 2, 2023, was near expiration, she submitted a new request to continue teleworking because of COVID sensitivity. On July 31, 2023, Plaintiff attended an interactive process meeting with her counsel, Defendant and GSD Human Resources Director Eunice Moya, and manager Dorothy Mendonca. Ex. A, p. 107:7-16.

27. During that meeting, Plaintiff said she was now requesting telework because of her migraines, not her risk of COVID exposure. Ex. A, p. 107:17 – 108:9; 110:3-13.

28. Specifically, Plaintiff claims on some days she awakens with a migraine, rendering her unable to work. On those days, she takes her migraine medication, which might take several hours to take effect. Once her medication takes effect, her migraine may go away, but the medication has side effects affecting her balance and depth perception, rendering her unable to drive for the rest of the day. Plaintiff claims, rather than taking FMLA leave for the entire day, she should be permitted to work from home for that period of the work day after her migraine resolves, despite having light sensitivity, balance and depth perception problems so severe she cannot safely operate a vehicle to drive to her office. Ex. A, 98:12- 101:11.

29. Plaintiff's migraine medication affects her depth perception such that when she reaches for something, she does not know "where something on the other end of [her] hand is." Ex. A, p. 189:17 – 190:9. Plaintiff testified the medication affects her balance such that she "stagger[s] around the house holding onto the wall." Ex. A, p. 100:12-25. However, Plaintiff claims these side effects do not prevent her from effectively doing her job, which requires her concentration and focus on a computer screen and drafting procurement contracts. Ex. A, 99:23 – 100:4.

30. On August 4, 2023, Plaintiff submitted a formal request to telework as a reasonable accommodation pursuant to the ADA.  This request cited her migraines, as was discussed during the July 31, 2023 interactive process meeting.  Ex. A, p. 90:25- 91:25.

31. Plaintiff had another phone call with Eunice Moya to discuss her request to telework as an accommodation for her migraines.  GSD did not approve telework as an accommodation, but GSD did discuss accommodations that could be made in the workplace. Ex. A, p. 114:25 – 115:9.

32. GSD does not permit telework or working from home for any employees.  See Rule 30(b)(6) Deposition of GSD, attached as Exhibit B, p.91:11-17; 93:10-18.

33. GSD has determined working in the office is an essential function of its positions. Ex. B, p. 84:25- 85:16; 101:22 -102:19;

34. Plaintiff accepted a position located in Santa Fe, New Mexico and is required to report to her office located at 1100 S. St. Francis Dr. when she is able to work. Ex. B, p. 85:19-25.

35. GSD's position is that staff must work in person so they can be effectively supervised.  If employees were permitted to work from home, they could not adequately supervised.  Ex. B, 87:11-25.

36. When Plaintiff applied for her current position, the job description indicated "[w]ork is performed in an office setting…"  Ex. B, p. 103:7-18, Ex. 16 thereto.

37. After the COVID emergency telework ended for State employees, the State Personnel Office circulated a directive to all State agencies that "non-manager and non-supervisor employees… **must** return to the office full-time *no later than* February 2, 2023." Ex. B, Ex. 21 thereto (emphasis in original).

38. GSD Attendance Policy, GSD-030, at § 6.11.1 provides "[e]mployees must arrive and be prepared to commence work at the scheduled start time."  Ex. B, Ex. 3 thereto (pg. GSD.00676).

39. GSD's Code of Conduct, GSD-002, § 7.2 provides "[e]mployees shall report to work on time, each scheduled workday…" and "[e]mployees shall report to work able to perform essential job functions…" Ex. B, Ex. 22 thereto (pg. GSD.00615).

40. During her interviews for other positions at GSD, Plaintiff has consistently told the interviewers she needs no accommodation to perform the duties of those jobs. Ex. A, p. 157:25-158:5; 164:1-4; 166:4-7.

41. **<u>Plaintiff's Claims for Failure to Promote</u>**: From August 17, 2023 to June 20, 2024, Plaintiff applied for six higher-paying jobs at GSD but was not selected for them. <u>See</u> 2nd Am. Compl, (Doc. 43), ¶¶ 94-106, 128-130.

42. In September 2023, Plaintiff was interviewed for Construction Unit Supervisor (Job #2954). <u>See</u> Affidavit of Jennifer Conn, attached as Exhibit C, ¶ 3. The applicant selected for hire, Tami Concha, performed better and scored higher in her interview than Plaintiff. Ex. C, ¶ 4-6. Ms. Concha was able to give detailed answers about her approach to projects and problems, and impressed the interview panel with her organizational skills and attention to detail. *Id.*

43. During Plaintiff's interview, she appeared to be less familiar with procurement processes and was unable to answer some questions on the topic. *Id.* The hiring panel unanimously chose Ms. Concha for Construction Unit Supervisor (Job #2954). Ex. C, ¶ 7

44. In September 2023, Plaintiff also interviewed for the position of Purchasing Deputy Director (Job #2961). Natalie Martinez was selected for hire. Ex. C, ¶ 8-9. Deputy Director is a supervisory position, and Ms. Martinez had management experience. Ex. C, ¶ 10. Plaintiff has never been a supervisor at GSD. *Id.* Ms. Martinez had many years more experience than Plaintiff and was Plaintiff's Bureau Chief (i.e. direct supervisor) at the time. *Id.* The interview panel found

Ms. Martinez gave a better interview than Plaintiff and unanimously selected Ms. Martinez for the position. *Id.*, ¶ 12-13.

45.  In January 2024, Plaintiff applied and was interviewed for Procurement Specialist Bureau Chief (Job #10106555). Ex. C, ¶ 14.  Vanessa Leblanc was selected for hire.  Ms. Leblanc had more years of experience that Plaintiff and had worked in several positions in the State Purchasing Division. Ex. C, ¶ 15-16.  Ms. Leblanc generally gave better answers during her interview, while Plaintiff was non-responsive to at least one question and answered other by discussing experience that was not relevant to position she was seeking.  *Id.*

46. The panel unanimously selected Ms. Leblanc for the Bureau Chief position (Job #10106555). Ex. C, ¶ 17.

47. In February 2024, Plaintiff applied for I.T. Procurement Specialist (Job #3018) and was interviewed for the position.  Yuli Wulandari was selected for hire.  See Affidavit of Francine Martinez, attached as Exhibit D, ¶ 4.

48. In the interviews, Ms. Wulandari described her extensive experience in I.T. and I.T. procurement, while Plaintiff stated she had very little experience in that area.  Ms. Wulandari clearly and in detail explained how her experience would relate to the position and give several examples of I.T.-related procurements and purchasing she handled before. Ex. D, ¶ 5-6.

49. The hiring panel was unanimous in its selection of Ms. Wulandari to fill the position (Job #3018).  Ex. D, ¶ 7.

50. In March 2024 Plaintiff applied for I.T Procurement Specialist (Job #2972).  Plaintiff was interviewed and Andric Fisher was selected for hire.  Ex. D, ¶ 8.

51. When asked what experience she had "relative to the skills required of the I.T. unit," Plaintiff told the interviewers she had "little to none." Ex. D, ¶ 9.  In contrast, Mr. Fisher answered

that question by discussing prior jobs in which he handled procurements and I.T. procurement specifically. Ex. D, ¶ 10. The hiring panel was unanimous that Plaintiff was not the best candidate for the position (Job #2972). Ex. D, ¶ 11.

52. In June 2024, Plaintiff applied for I.T. Procurement Specialist II (Job #49191) and was interviewed. Amber Sanchez was selected for hire because she had experience as a buyer, experience with I.T. contracts, and excelled in her previous position. See Deposition of Michael Saavedra, attached as Exhibit E, 41:17-42:3. Ms. Sanchez also generally interviewed well and gave better answers to the interview questions. Ex. E, p. 50:1-11; Deposition of Francine Martinez, attached as Exhibit F, p. 154:6-12.

53. Plaintiff interviewed poorly for I.T. Procurement Specialist (Job #49191). Ex. E, p. 52:17-53:1. When asked what relevant experience she had, Plaintiff responded "little to none." Ex. F, p. 187:10-188:3.

54. The decision to hire Ms. Sanchez was unanimous among the hiring committee. Ex. E, p. 44:20-45:3; Ex. F, p. 184:13-24.

55. During the interviews for I.T. Procurement positions (Jobs #3018, #2972, and #49191), Plaintiff did not appear to be engaged in the interviews or truly interested in the positions, but rather as if she was simply 'going through the motions' of the interview process. Ex. D, ¶ 12.

56. The interviewers did not know Plaintiff had a medical condition, and Plaintiff told them she could perform the duties of the jobs without any accommodation. Ex. C, ¶ 18, Ex. D, ¶ 13. See also, Ex. A, p. 157:25-158:5; 164:1-4; 166:4-7 (Plaintiff testifying she told the interviewers she needed no accommodation to perform the jobs for which she applied).

57. Plaintiff's age was not a factor in these hiring decisions. Ex. C, ¶ 19, Ex. D, ¶ 14, Ex. E, p. 52:2-16.

58. Plaintiff has no evidence that her age or medical condition were factors in the hiring decisions at issue, other than the fact that others were selected for those positions. Ex. A, p. 165:19-22.

59. **<u>Plaintiff's MWA Claim</u>**: On September 6, 2024, Plaintiff had a doctor's appointment and wished to "flex" her time- meaning to adjust her working hours just for that day- so she could leave early and make the appointment. However, she forgot to ask her supervisor, Vanessa LeBlanc for approval to flex her time until approximately 4:19 pm on September 5, 2024. Ex. A, p. 139:3 – 140:5.

60. GSD employees who want to flex their workday, are required to have the prior approval of their supervisor. Ex. A, p. 140:6-16. When Plaintiff emailed Ms. Leblanc at 4:19 p.m., she knew Ms. Leblanc had already left the office for the day. Ex. A, p. 141:8-13. Ms. Leblanc was out of the office the next day, September 6, 2024. *Id*. p. 141:14-17.

61. Plaintiff agrees she was required to have approval from her supervisor to flex her schedule and did not get the required approval to flex her schedule on September 6, 2024. Ex. A, p. 148:13-23. In the past, Plaintiff had been reminded by her supervisors before that if she could not work outside her regular schedule without prior approval because it caused an "FLSA Issue" (meaning an issue with overtime pay.) Ex. A, p. 185:1- 186:7.

62. Because she worked outside her regular work schedule without approval, Plaintiff was not paid for approximately 1 hour and 15 minutes she claims to have actually worked. Ex. A. p. 141:19-24.

63. Although Plaintiff testified she worked a full 8-hour day on September 6, 2024, she only worked about 7.5 hours. <u>See</u> Plaintiff's Emails, attached as Exhibit G (indicating Plaintiff worked

approximately 5 hours in the morning and 2.5 hours in the afternoon that day), and 2nd Am. Compl,

(Doc. 43), ¶ 134 (confirming Plaintiff worked less than an 8-hour day).

## Points and Authority

There has been no discriminatory action taken against Plaintiff. She has not been

disciplined, nor has she been subjected to a hostile work environment. GSD has offered to make

accommodations for Plaintiff in the workplace, but is not required by law to permit an employee

to work from home as an accommodation. Although there were paperwork issues and delays in

approving Plaintiff's FMLA leave for the years 2023 and 2024, her FMLA was ultimately

approved both years and she has taken as many days off as requested, with no adverse action as a

result. Defendants are entitled to summary judgment.

## I.    Defendants Have Not Interfered With Plaintiff's FMLA Benefits.

Following Tenth Circuit law, this District has recently found to "succeed on an FMLA

interference claim, an employee must show that (1) he was entitled to FMLA leave, (2) an adverse

action by his employer interfered with his right to take FMLA leave, and (3) this adverse action

was related to the exercise or attempted exercise of the employee's FMLA rights." See, Rodriguez-

Ortega v. Rich, et al, 1:21-cv-1129 JCH/KK (D.N.M.)(September 26, 2024), p. 16 (citing *Tadlock*

*v. Marshall County HMA, LLC*, 603 F. App'x 693, 709 (10th Cir. Feb. 25, 2015)).

A plaintiff can meet the second element- requiring adverse action- by showing "that he was

prevented from taking the full 12 weeks of leave guaranteed by the FMLA, denied reinstatement

following leave, or denied initial permission to take leave," or by "discouraging an employee from

using FMLA leave." See, Rodriguez-Ortega, p. 16-17 (citing *Campbell v. Gambro Healthcare,*

*Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007)).

In <u>Rodriguez-Ortega</u>, the plaintiff was approved for intermittent FMLA leave, but was eventually terminated because, among other things, he did not follow the employer's call-in procedures and was marked Absent Without Leave ("AWOL") on some days. *Id.*, pp. 3-4, 7-8, 13. The plaintiff claimed his employer interfered with his FMLA rights by  marking him AWOL and ultimately terminating him.  The Court granted summary judgment for the defendant, finding the employer correctly followed its "policy requiring notice of absences, *even if the absences that the employee failed to report were protected by the FMLA."*  Id., p. 22 (citing *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1008-09 (10th Cir. 2011)(emphasis in original)).  The Court found the defendant ultimately provided Mr. Rodriguez-Ortega the forms to apply for FMLA leave and approved him for intermittent FMLA leave. *Id.*, p. 24.  The decision to mark Mr. Rodriguez-Ortega as AWOL for a few days was not to interfere with his FMLA rights, but to enforce the employer's leave notification policies.  *Id.*, p. 24-25.  Judge Herrera granted summary judgment, dismissing Mr. Rodriguez-Ortega's FMLA interference claim.

The case now before the Court is even weaker than the one Judge Herrera dismissed last year.  Unlike Mr. Rodriguez-Ortega, Plaintiff has not been terminated, nor disciplined in any way by Defendants.  Plaintiff cannot meet the second element of her claim because there has been no adverse employment action.

The undisputed facts are that Plaintiff submitted her application for FMLA renewal for 2023 and GSD's H.R. department told her the documents needed more information from her medical provider.  There was then a delay of several weeks because Plaintiff's provider had an extended illness.  By the end of March 2023, Plaintiff's FMLA was certified and approved by GSD.  During the meantime, she continued calling in sick for her FMLA-qualified condition as needed, and those days were initially coded as authorized leave without pay, rather than unpaid

FMLA.  Even if GSD H.R. was incorrect and Plaintiff's initial certification was sufficient, she was not prohibited from taking off the days she needed for her medical condition, and her FMLA was approved weeks later.

In 2024, GSD initially interpreted the certification from Plaintiff's provider as to limit her to four days per month of FMLA leave.  When Plaintiff took more than 4 days per month, she was asked to get another certification from her provider and continued calling in sick as needed for her FMLA-qualifying condition.  Again, her FMLA for 2024 was ultimately approved and she was permitted to take up to 31 days per month of FMLA leave, as needed and requested by her.

Further, Plaintiff has no evidence to support the third element of her claim: that some adverse action was "related to the exercise or attempted exercise of" her FMLA rights.  *Tadlock*, *supra.*  Even if Plaintiff could show an adverse action here, there is no evidence that any action was taken as a result of her application for FMLA leave.

In both 2023 and 2024, GSD ultimately approved Plaintiff's requests for intermittent FMLA leave and allowed her to take as many days off for her qualifying medical condition as she requested.  Plaintiff has never been disciplined as a result of some days being coded "Leave Without Pay- Authorized" rather than FMLA Leave.  Plaintiff has never called in sick and been told she was required to report to work that day or face some consequence.  Plaintiff has not lost any pay as a result of some days being coded as one kind of unpaid leave rather than another.  She continues taking intermittent FMLA leave as requested to this day.  Plaintiff's FMLA claim must be dismissed.

## II.    Plaintiff Is Not Entitled To Work From Home.

Count II of the Second Amended Complaint alleges GSD violated the HRA by not allowing Plaintiff to work from home as an accommodation for a medical condition.

Like many employees across the country, Plaintiff did not want to come back to the office after the COVID emergency ended.  First she sought permanent telework, citing a vulnerability to COVID.  When it was explained that accommodations could be made in the office to help prevent contraction of COVID, Plaintiff pivoted to the position that she should be able to telework on days she takes migraine medication that allows her to perform her job, but not drive a vehicle.

GSD has determined in-office attendance is an essential function of Plaintiff's and other office-based positions.  The State Personnel Office indicated at the beginning of 2023 that all "non-manager employees and non-supervisor employees … **must** return to the office full-time **no later than** February 2, 2023."  UMF ¶¶ 23, 37.  This was not a policy directed at Ms. Hunt-Brown, but all non-manager/non-supervisor State employees, which would include Ms. Hunt-Brown.  GSD explained the ability to adequately supervise employees when they are not in the office is a business necessity and the inability to do so creates an undue hardship.  UMF ¶ 35.

In *Duffee v. T-Mobile USA, Inc.*, 1:23-cv-536 MIS/LF (D.N.M.) (October 2, 2023) a plaintiff asked to work from home as an accommodation for her disability.  Judge Strickland found "the Tenth Circuit has firmly established that requests to work remotely are not, as a matter of law, reasonable accommodations." *Id.*, p. 8. (citing *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050-51 (10th Cir. 2017)).  Judge Strickland was correct.  In *Punt,* the Tenth Circuit held:

> "Physical attendance in the workplace is itself an essential function of most jobs, and an employee's request to work from home is, as a matter of law, unreasonable if the employer has decided that physical presence at the workplace is an essential function of the position."

*Id.* at 1051. An "employee's request to be relieved from an essential function of her position is not, as a matter of law, a reasonable or even plausible accommodation."  *Id.*

The Tenth Circuit's holding in *Punt* built on its prior holding that courts are "require[d] to consider the employer's judgment as to what functions of a job are essential."  *Mason v. Avaya*

*Comm's, Inc.*, 357 F.3d 1114, 1119-1120 (10th Cir. 2004) (noting other circuits have held physical attendance is an essential function of most jobs). The Court concluded "physical attendance [at the workplace] is an essential function of the [position]. Mason's request to work at home would eliminate physical attendance at the [workplace]." *Id.* at 1123. Therefore, the plaintiff failed to establish her claim for failure to accommodate. *Id.* at 1125.

The Fourth Circuit has held:

"in addition to possessing the skills necessary to perform the job in question, an employee must be willing and able to demonstrate these skills by coming to work on a regular basis. Except in the unusual case where an employee can effectively perform all work-related duties at home, an employee who does not come to work cannot perform any of his job functions, essential or otherwise. Therefore, a regular and reliable level of attendance is a necessary element of most jobs"

*Tyndall v. Nat'l Educ. Centers, Inc. of California,* 31 F.3d 209, 213 (4th Cir. 1994)(internal citations omitted).

If asked, GSD will provide reasonable accommodation to Plaintiff in her workplace, but Defendants are not required to permit Plaintiff to work from home as a matter of law. Plaintiff's claim for failure to accommodate should be dismissed.

III.     **Plaintiff Has Not Been Subjected To A Hostile Work Environment.**

Having no adverse employment action taken by Defendants, Plaintiff claims she has been retaliated against by being exposed to a hostile work environment. To "prevail on a discrimination claim based on a hostile work environment, a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Gerald v. Locksley*, 784 F.Supp.2d 1074, 1119 (D.N.M. 2011) (citing *Sandoval v. City of Boulder*, 388 F.3d 1312, 1327 (10th Cir.2004)). The Court must consider "the work atmosphere both objectively and subjectively, looking at all the circumstances from the

17

perspective of a reasonable person in the plaintiff's position. We may consider the conduct's frequency and severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the plaintiff employee's work performance." *Id. See also, Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (holding a hostile work environment must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."). "[P]etty slights, minor annoyances, and simple lack of good manners" do not amount to adverse employment actions. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S.53, 68, 126 S.Ct. 2405 (2006).

Plaintiff's own testimony describes no hostile work environment. She has never been insulted. To the contrary, her supervisors (Defendants Martinez, Paulk and Leblanc) have always acted professionally. <u>See</u> UMF ¶ 8. Plaintiff merely perceives Ms. Leblanc is sometimes 'less friendly' with her than others in the office. UMF ¶ 9. She does not describe an environment so abusive and pervasive that it alters the terms of her employment. There has been no hostile work environment and no adverse employment action here. This Motion should be granted.

## IV.    <u>Plaintiff's Minimum Wage Act Claim (Count V) Must Be Dismissed.</u>

Plaintiff's New Mexico Minimum Wage Act ("MWA") claim is based on the premise she had authority to work outside her approved work schedule on September 6, 2024, also known as 'flex time.' The parties agree that GSD employees are only permitted to flex their time if they have prior approval of a supervisor.[2] It is also undisputed that Plaintiff forgot to request a flex day until late September 5, 2024, when she knew her supervisor had already left for the day.

---

[2] In addition to Plaintiff's own testimony on this point (UMF, ¶ 61), Defendants attach the policy, GSD-003, § 6.2.4 as Exhibit H ("An employee may not change or flex their approved [work schedule] without prior approval from the employee's immediate supervisor/manager.")

Plaintiff's supervisor did not see her request until she returned several days later and therefore did not pre-approve the request. It is further undisputed Plaintiff did not work a full 8-hour day on September 6, 2024. Plaintiff did not seek approval to flex her time from any other manager and simply worked outside her approved work schedule on September 6, 2024 without approval to do so. Plaintiff was paid for the hours she actually worked within her approved work schedule. The MWA claim should be dismissed.

### V.    Plaintiff's Failure To Promote Claims Must Be Dismissed.

After this lawsuit was filed[3], Plaintiff began applying for promotions; six positions in all. Plaintiff met the minimum qualifications and was interviewed for those positions but was not selected for them. Count I of Plaintiff's 2nd Am. Compl. claims a violation of the HRA, alleging she was not selected for hire for these positions because of her medical condition. (Doc. 43), ¶ 140, *et seq.* Count IV alleges Plaintiff was not selected for one position because of age discrimination, I.T. Procurement Specialist II (Job #49191). *Id.*, ¶ 218, *et seq.*

When considering a HRA claim for employment discrimination, New Mexico courts follow the "federal burden-shifting methodology under Title VII of the Civil Rights Act of 1964." *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 9, 139 N.M. 12. (adopting the framework found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817 (1973). Under "the *McDonnell Douglas* framework, an employee bears the initial burden of demonstrating a prima facie case of discrimination, which then shifts the burden to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action. The employee then has the opportunity to rebut the employer's proffered reason as pretextual or otherwise inadequate." *Id.* As such, even if Plaintiff could make a *prima facie* case of discrimination, she must still overcome

---

[3] Plaintiff's initial complaint was filed in State Court on August 15, 2023.

the undisputed evidence of GSD's legitimate non-discriminatory reasons for selecting other applicants for the positions at issue. *See, e.g., Brenneman v. MedCentral Health System*, 366 F.3d 412, 417-418 (6th Cir. 2004) (holding "the plaintiff always retains the ultimate burden of persuasion).

To show pretext, "the plaintiff must establish that the employer's proffered reasons "were so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief. But mere conjecture that the employer's explanation is pretextual cannot defeat summary judgment." *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1216 (10th Cir. 2022) (internal citations omitted). As in this case, the employer in *Ford* noted the plaintiff "was not promoted because other candidates performed better in interviews and were thus more qualified than her." *Id.* The Tenth Circuit held interview performance is a legitimate nondiscriminatory reason to select one applicant over another. *Id.*

Although Plaintiff cites a general belief that her age and medical condition "might have had something to do with" these hiring decisions, she has no evidence to support her belief. Indeed, her interviewers did not know she had a medical condition. UMF ¶ 56. *See, e.g., Trujillo v N. Rio Arriba Elec. Co-op, Inc.*, 2002-NMSC-004, ¶ 18, 131 N.M. 607 (holding an employer cannot discriminate against an employee because of a disability "unless it knows of the disability. If it does not know of the disability, the [action] is 'because of' some other reason."). Further, the interviewers for these positions have testified why they selected other candidates for hire, including that Plaintiff did not interview well, did not have the experience other candidates did, and in many cases, did not seem engaged in the interviews.

Although a younger applicant was hired for I.T. Procurement Specialist II (Job #49191), Plaintiff has no evidence age was the reason, and certainly no evidence to overcome the rebut the testimony of the members of the hiring panels. These claims should be dismissed.

## Conclusion

Plaintiff has experienced neither adverse employment action nor retaliation. She has not described a hostile work environment. Rather, Plaintiff testified her supervisors have treated her professionally. Plaintiff's intermittent FMLA leave has never been interfered with. She has never been forced to work nor disciplined for taking a sick day. Plaintiff continues her employment with GSD to this day, taking as much intermittent FMLA leave as she wants.

While GSD has offered to make accommodations for Plaintiff in the workplace, GSD is not required to allow Ms. Hunt-Brown to work from home as an accommodation. Plaintiff's job is in GSD's office, and that is where she must report when she is able to work. The undisputed material facts in this case do not support Plaintiff's claims and the should be dismissed. This Motion should be granted.

**WHEREFORE** Defendants respectfully prays this Court enters summary judgment on all Counts of Plaintiff's Second Amended Complaint (Doc. 43).

Respectfully submitted,

**JACKSON LOMAN DOWNEY
& STEVENS-BLOCK, P.C.**

/s/ by Eric Loman_____
Eric Loman
Counsel for Defendants
201 Third St. N.W., Ste. 1500
Albuquerque, NM 87102
(505) 767-0577
eric@jacksonlomanlaw.com

I certify the foregoing was filed via the Court's
CM/ECF system on August 15, 2025, which
causes all counsel of record to be served electronically.

/s/ by Eric Loman
Eric Loman