**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**


**KIMBERLY HUNT-BROWN**


    **Plaintiff,**

**vs.**               **Civ. No. 23-cv-00782 SMD-KK**


**NEW MEXICO GENERAL SERVICES DEPARTMENT,**

**And VALERIE PAULK, EUNICE MOYA, JENNIFER MORFIN,**

**VANESSA LEBLANC, AND NATALIE MARTINEZ,**

**In their individual and official capacities**

    **Defendants.**


**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON**

**COUNT III: FMLA INTERFERENCE**


   COMES NOW, Plaintiff Kimberly Hunt-Brown, by and through her counsel of record,

Heather Burke with her Motion for Partial Summary Judgment on Count III: FMLA Interference.


    **I.**   **Statement of Undisputed Material Facts**


1. Plaintiff began working for Defendants on or around May 19, 2014.

2. She began working in her current position on August 12, 2017. [Declaration of Kimberly

   Hunt-Brown]


1

3. Plaintiff has Multiple Sclerosis and suffers from debilitating migraines. They are both disabilities and/or serious medical conditions under the NMHRA and FMLA qualifying conditions.  [Ex 1]

4. Plaintiff's first 2023 FMLA physician certification form was signed on January 19, 2023 and submitted by Plaintiff on January 26, 2023 [Ex 1 2023 1st Certification] [Ex 2 email chain]

5.  On January 27, 2023, Defendants rejected Plaintiff's physician certification stating that "more information was needed" and "All that was stated was chronic condition." [Ex 2 Email chain]

6. The FMLA does not require a diagnosis, and such information is to be provided only at the discretion of the medical provider.  "Employers may not reject a certification because it lacks a diagnosis" [Ex 3 Cert guide page 31]

7. Ms. Hunt-Brown continued to designate her leave as FMLA when she had flare ups, while she sought clarification from her provider.  [Declaration of Kimberly Hunt-Brown]

8. Plaintiff submitted another physician certification form filled out by her provider, signed on February 17, 2023. [Ex 4 email pg 5]

9. On February 23, 2023, Human Resource Analyst Kelly Howley rejected Plaintiff's certification form to her claiming that her provider determined the FMLA year, and that the provider had failed to include dates on a section which didn't apply to Plaintiff. [Ex 4 email pg 1]

10. Plaintiff's FMLA year is not determined by her medical provider, and is based on the date she first takes intermittent leave after giving notice of her need for leave.  [Ex 5 FMLA policy]

11. On February 23, 2023, Defendant Moya and Ms. Howley told Plaintiff that she could no longer invoke the FMLA because her FMLA was "expired" [Ex 4 pgs 2 and 3]

12. On March 1, 2023, Plaintiff had a flare up of her medical conditions. At 8:03am her husband assisted her to text Defendants Paulk and Martinez saying "Waking with nausea and vertigo. Took meds. Plan to be in later and will let you know when I start working. FMLA" [Ex 6 March 1 texts pg 1]

13. Defendant Paulk enquired as to whether Plaintiff's FMLA had been "approved" [Ex 6 March 1 texts pg 1]

14. When Plaintiff's condition did not improve, and in fact worsened, Plaintiff's husband sent another text from plaintiff's phone saying "This is Joe, Kim's husband. She will not be in today at all." [Ex 6 March 1 texts pg 2]

15. Defendants refused to designate Plaintiff's leave on March 1 as FMLA qualifying, and marked the morning time as LWOP, and the afternoon time as AWOL. [Ex 7 designated AWOL]

16. GSD policy does not allow indirect notice of leave, except in exigent circumstances. [Ex 8 att leave policy pg 13]

17. Defendants Martinez and Paulk admit that they marked Plaintiff AWOL because her husband gave notice, and not her. Natalie Martinez Depo pgs 130-131] [Ex 10 Valerie Paulk Depo pg 145-146]

18. However, Plaintiff's husband had previously given notice of Plaintiff's need for leave, and Defendants did not mark Plaintiff AWOL on those occasions. [Ex 11 Jan 26 2022 chain]

19. On March 1, 2023, Plaintiff had paid leave available to take concurrent with her FMLA, but was marked LWOP and AWOL and not paid for that day. [Declaration of Kimberly Hunt-Brown] [Ex 25 Paystub]

20. GSD policy defines AWOL as "Employees who fail to appear for work and do not have authorized leave, or who appear for work but are in violation of an agency policy governing their readiness for work (e.g., violation of drug and alcohol policy, Code of Conduct), shall be considered to be absent without leave." [Ex 8 Attendance and Leave Policy 6.9.1]

21. Employees shall not be paid for periods of AWOL, and shall not accrue annual or sick leave during an AWOL period. [Ex 8 Attendance and Leave Policy 6.9.2]

22. GSD Employees will be subject to "disciplinary action up to and including dismissal" for being AWOL.  [[Ex 8 Attendance and Leave Policy 6.5.7]

23. GSD Policy states "Any employee with a poor attendance record, excessive tardiness, numerous and frequent short-term absences, a history of one-, two- and three-day illnesses, or frequent emergencies which occur on the day before or after scheduled or approved days off or which precede or follow holidays, use of leave immediately upon accrual, thus maintaining zero or near-zero leave balances, may be subject to disciplinary action, up to and including dismissal." [Attendance and Leave 6.1.5]

24. On March 2, 2023, Defendant Moya directed Kelly Howley to change all of Plaintiff's FMLA designated absences to no longer be FMLA designated absences.  [Ex 12 Moya email March 2]

4

25. On March 2, 2023, Plaintiff's attorney sent a letter by email to acting secretary Anna Silva, notifying them that they were interfering with Plaintiff's federal rights under the FMLA [Ex 13 Burke Letter March 2, 2023]

26. Defendants continued to deny Plaintiff FMLA leave until March 30, 2023 finally approved her 2023 FMLA year.

27. Defendant Moya did not communicate with Plaintiff or her counsel or otherwise seek agreement before unilaterally directing Kelly Howley to retroactively designate Plaintiff's absences as FMLA.  [Declaration of Kimberly Hunt-Brown] [2023 Retroactive Change Log]

28. Plaintiff was discouraged from taking FMLA leave she otherwise would have taken due to Defendants denying her leave, making her seek approval each absence and marking her AWOL even when she gave notice.  [Declaration of Kimberly Hunt-Brown]

29. Leave Without Pay (LWOP) is approved at management discretion and can be denied. [Ex 16 30b6 Depo pg 37 ln 17-18]

30. Defendants refused to reimburse Plaintiff for her damages and attorneys fees related to the 2023-24 FMLA interference.  [Ex 17 GSD March 7 2023 Letter]

31. Defendants admit that they made a mistake in not timely certifying Plaintiff's FMLA year for 2023-2024.  [Ex 18 Eunice Depo pg 57] [Ex 16 30b6 Depo pg 112 ln 6-11]

32. Plaintiff's application and certification forms for FMLA year 2024-25 were submitted on January 23, 2024. [Ex 19 2024 Approval]

33. GSD FMLA policy 6.3.2 2 states that "The next 12 month period would begin the first time FMLA leave is taken after completion of any previous 12-month period.  [Ex 5 FMLA Policy]

34. Plaintiff had an FMLA qualifying absence on January 26, 2024. [Ex 19 2024 approval]

35. Defendants Morfin and Moya denied Plaintiff FMLA leave for her January 26, 2024 FMLA qualifying absence.  [Ex 19 2024 approval]

36. In March 2024, Plaintiff's mother was dying in hospice care in Ohio.  [Declaration of Kimberly Hunt-Brown]

37. The stress of her mother's impending death caused significant flare ups of Plaintiff's migraines.  [Declaration of Kimberly Hunt-Brown]

38.  On March 11, 2024, after Plaintiff had had 3 FMLA designated absences that month, Defendants Morfin and Moya told Plaintiff that she could have no more than 4 FMLA absences a month. [Declaration of Kimberly Hunt-Brown] [Ex 20 Donated Leave and Intermittent FMLA status pg 2]

39. Ms. Morfin and Defendant Moya stated that Plaintiff's medical provider's estimate of the number of migraine flare ups Plaintiff might experience in a month would be treated as a strict limitation. [Ex 20 Donated Leave and Intermittent FMLA status email pg 2]

40. Ms. Morfin and Defendant Moya stated that Plaintiff would need to reapply for FMLA with new certification if she wanted to take more than 4 FMLA instances in a month.  [Ex 20 Donated Leave and Intermittent FMLA status pg 2]

41. Defendants Moya and Morfin stated that after 4 FMLA absences in a month, Plaintiff would have to seek "preapproval from your direct supervisor." [Ex 20 Donated Leave and Intermittent FMLA status pg 2]

42. Defendants FMLA policy 7.2.3.3 states that if Defendants require another FMLA certification, they must give no less than 15 days, if practicable, before they may deny any leave. [Ex 5 FMLA policy]

43. Plaintiff received 35.61 hours of donated leave on March 15, 2024. [Ex 21 Timesheets pg 1]

44. On March 22, 2024, Plaintiff informed Defendants that she was not able to be seen by her doctor until April 29, 2024 and therefore would not be able to obtain a new certification until that date.  [Ex 20 Donated Leave and Intermittent FMLA status email pg 1]

45. Defendants Morfin, Martinez, Leblanc and Morfin began denying Plaintiff FMLA leave beginning on March 18, 2024 only 7 days after requesting recertification. [Declaration of Kimberly Hunt-Brown] [Ex 21 Timesheets pg 2, 3, 6, 8]

46. Defendants admit that they did not follow the FMLA or their policy when they failed to even give 15 days before denying FMLA leave.  [Ex 16 30b6 Depo pgs 191- 192 ln 22 - 16]

47. Ms. Morfin and Defendant Moya also informed Plaintiff that she could only use donated leave with FMLA leave, and therefore only up to 4 times a month, and she had used up her 4 absences in March already.  [Ex 22 March 25]

48. Any absences for the remainder of March 2024 would have to be preapproved by Plaintiff's direct supervisor.  [Ex 22 March 25]

49. Defendants' Leave Donation policy does not require that donated leave can only be used or FMLA leave, only that those eligible for FMLA must use FMLA leave in conjunction with donated leave.   [Ex 23 Leave donation policy]

50. Plaintiff was forced to seek Leave without Pay for each of her absences caused by her FMLA covered condition, and not allowed to use the paid leave she had available to her. [Declaration of Kimberly Hunt-Brown] [Ex 22 March 25]

51. Despite having actual notice of Plaintiff's notice of need for FMLA, Defendants denied Plaintiff FMLA leave on March 18, 20, 22, 26, April 19, 29, and 30. [Ex 21 Timesheets pg 2, 3, 6, 8] [Declaration of Kimberly Hunt-Brown]

52. Defendants even denied Plaintiff FMLA leave for the recertification appointment. [Declaration of Kimberly Hunt-Brown] [Ex 21 Timesheets pg, 8]

53. Plaintiff's new certification forms signed by her medical provider on April 29, 2024 estimated up to 31 times a month from 4-72 hours per episode, and stated "Due to the unpredictable nature of these illnesses, I cannot guess about the frequency of episodes. Chosen frequency to account for all possibilities." [Ex 24 recert pg 3-4]

54. Defendant Moya and Morfin did not retroactively designate Plaintiff's March and April FMLA absences, never communicated with Plaintiff about whether retroactive designation was appropriate nor was there discussion about remedying the harm they had caused Plaintiff by denying her FMLA leave.  [Declaration of Kimberly Hunt-Brown]

## II.   ARGUMENT

Summary Judgment is appropriate when there are no genuine disputes of material fact to necessitate trial.  "Summary judgment generally is appropriate when a court determines that there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Slusser v. Vantage Builders, Inc.,* 576 F. Supp. 2d 1207, 1208 (D.N.M. 2008) "Summary judgment should be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *United States v. Thrasher*, No. CV 08-172

MCA/WPL, 2009 U.S. Dist. LEXIS 94606, at *5-7 (D.N.M. Aug. 26, 2009)(citing FED. R. Civ. P. 56(c)). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Lopez v. Delta Int'l Mach. Corp.*, 312 F. Supp. 3d 1115, 1125 (D.N.M. 2018).

**A.      Ms. Hunt-Brown Is Entitled to Summary Judgement As A Matter Of Law Of Her FMLA Interference Claims.**

A plaintiff on an FMLA interference claim must establish the following: (1) that he was entitled to FMLA leave; (2) that some adverse action by the employer interfered with his right to take FMLA leave; and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights. *Dalpiaz v. Carbon County*, 760 F.3d 1126, 1132 (10th Cir. 2014) *Gambro v. Campbell Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007), citing *Jones v. Denver Pub. Schs.*, 437 F.3d 1315, 1318 (10th Cir. 2005). The employer bears the burden of proof on the issue of whether the employer's actions were related to the exercise or attempted exercise of the employee's FMLA rights where the employee has shown some adverse action interfering with the right to use FMLA leave. *Dalpaz*, 760 F.3d at 1132; *Gambro*, 478 F.3d at 1287; *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006).

Where an employer interferes with the employee's right to FMLA leave, the deprivation constitutes a violation of the FMLA regardless of employer intent. *Brown v. ScriptPro, Inc.*, 700F.3d 1222, 1226-27 (10th Cir. 2012); *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955,960 (10th Cir. 2002). Under an interference theory, the employee must simply demonstrate an entitlement to the disputed leave. *Smith*, 298 F.3d at 960. The McDonnell-Douglas framework is not applicable to FMLA interference claims. *ScriptPro, Inc.*, 700 F.3d at 1226-27. Consequently, a pretext analysis is not necessary in determining FMLA interference claims. Id.

at 1228.

The FMLA "provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost 'by reason of the violation,' for other monetary losses sustained 'as a direct result of the violation,' and for 'appropriate' equitable relief, including employment, reinstatement, and promotion." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89, 122 S. Ct. 1155, 152 L. Ed. 2d 167 (2002)

### 1.    The Application of the Law of FMLA Interference to the Undisputed Material Facts of This Case.

To qualify for FMLA, an employee must have worked for the employer for 12 months and have worked 1250 hours in the past 12-month period "immediately preceding the commencement of the leave" 29 CFR § 825.110(a)(2). An employer is subject to extensive notice requirements under the FMLA. See 29 C.F.R. § 825.300. Among other things, the employer must give the employee notice of FMLA leave eligibility and rights, notice of how leave is designated and treated, any requirement for providing a certificate validating a health condition, and any fitness-for-duty certification required as a condition for return to work.

29 C.F.R. § 825.300(b)(1) requires "when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days…. Employee eligibility is determined (and notice must be provided) at the commencement of the first instance of leave for each FMLA-qualifying reason in the applicable 12-month period."

Failure to follow the notice requirements may constitute an interference with an employee's FMLA rights, if the employee is prejudiced thereby. *Crites v. City of Haysville*, No.

16-1397-JWB, 2018 U.S. Dist. LEXIS 82318, at *23-24 (D. Kan. May 16, 2018).  "Prejudice may be gleaned from evidence that had the plaintiff received the required (but omitted) information regarding his FMLA rights, he would have structured his leave differently" *Id.*, at *27 (D. Kan. May 16, 2018) (citing *Vannoy v. Fed. Res. Bank of Richmond*, 827 F.3d 296, 302 (4th Cir. 2016)). 29 CFR § 825.220 (b) Any violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act.

29 C.F.R. § 825.301(d) Retroactive designation. If an employer does not designate leave as required by § 825.300, the employer may retroactively designate leave as FMLA leave with appropriate notice to the employee as required by § 825.300 **provided that the employer's failure to timely designate leave does not cause harm or injury to the employee**. In all cases where leave would qualify for FMLA protections, an employer and an employee can mutually agree that leave be retroactively designated as FMLA leave. (emphasis added)

29 C.F.R. § 825.301 (e) Remedies. If an employer's failure to timely designate leave in accordance with § 825.300 causes the employee to suffer harm, it may constitute an interference with, restraint of, or denial of the exercise of an employee's FMLA rights. An employer may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered.

Here, there is no dispute that Plaintiff was entitled to FMLA, and that Defendants unreasonably interfered with her federal rights by refusing to timely certify her FMLA leave, and by denying her FMLA protected leave to which she was entitled.  Defendants improperly

11

delayed certification of Plaintiff's FMLA for about 2.5 months in 2023, and denied Plaintiff protected leave while they refused to certify her application.

Similarly, as discussed herein, in March 2024, they suddenly and arbitrarily restricted the amount of intermittent leave that Plaintiff could take each month based on her provider's mere estimate and immediately denied any additional FMLA leave without allowing time for Plaintiff to obtain recertification from her providers. This is a clear violation of federal law, and Defendants own FMLA policy. That they then used their unlawful interference with FMLA to also deny Plaintiff the use of her available paid leave, makes the violation even worse, and resulted in clear loss of income.

**B.    Defendants interfered with Plaintiff's FMLA when they failed to timely certify her application in 2023.**

Plaintiff had turned in all required FMLA paperwork on or before January 26, 2023 but Defendant Moya and her subordinate Kelly Howley repeatedly improperly rejected these certification forms, forcing Plaintiff to have to return to her provider several times. The last alleged deficiency involved a section of the form which did not even apply to Plaintiff's treatment and/or condition and instead asked about the patient being referred to another medical provider.

After unlawfully delaying certification, Defendant Moya instructed Ms. Howley to change Plaintiff's timesheet, removing all FMLA designated absences and replacing them with unprotected absences, and informed Plaintiff that she could no longer invoke FMLA. Even if the certification deficiencies Defendants alleged were actually legitimate, Defendant Moya had no reasonable belief that Plaintiff would be unable to qualify for FMLA, and should have continued

12

to designate the time while the certification wrinkles got ironed out, not telling Plaintiff that she could no longer "invoke" FMLA which clearly discourages her from taking leave. However, there was no legal basis to the alleged deficiencies. Plaintiff's provider is not required to state a diagnosis or name Plaintiff's medical conditions. And the second delay involved a section that wasn't even applicable to Plaintiff as she was not seeking treatment anywhere else. Plaintiff's medical provider does not determine when Plaintiff's FMLA year begins as this is determined from the first date leave is taken.

Defendants Martinez and Paulk interfered with Plaintiff's FMLA by refusing to designate her protected leave as FMLA time, and taking adverse action against her for leave which was FMLA qualifying leave. On March 1, Defendant Paulk and Martinez interfered with Plaintiff's FMLA by marking Plaintiff AWOL for leave that Plaintiff and her spouse gave notice was for her FMLA qualifying condition. Being marked AWOL is an adverse action, is unpaid and subjects the recipient to possible discipline, including possible termination. The fact that Defendants Moya, Martinez, and Paulk refused to properly designate Plaintiff's March 1, 2023 absence as FMLA protected set Plaintiff up for additional and unlawful notice requirements which Defendants then used to try to punish Plaintiff for taking leave.

Defendants unlawfully continued to deny Plaintiff her FMLA leave through the month of March 2023 even after receiving a letter from undersigned counsel on March 2, 2023, informing them that their failure to certify Plaintiff's FMLA entitlement was unlawful, and explaining exactly why. Defendants had actual knowledge that they were violating the FMLA and yet they continued to do so. Intentionally refusing to designate leave as FMLA is a violation of the FMLA and subject to liquidated damages.

13

Defendants then unilaterally retroactively designated Plaintiff's leave as FMLA, without her agreement or input.  Defendants must have given appropriate notice of retroactive designation and can only retroactively designate leave if their failure to timely designate the leave didn't harm Plaintiff.  Defendants knew that Plaintiff had been harmed by their failure as this had been detailed in the letter they received on March 2, 2023, and yet they unilaterally retroactively designated her leave anyway, and denied her reasonable request to be compensated for her damages.

### 1.    Defendants Attendance and Leave Policy Directly Conflicts with the FMLA by Prohibiting Indirect Notice of Leave.

Defendants Attendance and Leave policy 7.3.1.3 states:

> Notification from an immediate family member or friend does not constitute proper notification unless, due to exigent circumstances, the employee is unable to contact the supervisor. In such instances, the employee must personally contact their supervisor/manager as soon as possible.

This policy is in direct conflict with 29 C.F.R. § 825.303 which allows:

> When the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case. It generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave. See § 825.303(c). Notice may be given by the employee's spokesperson (e.g., spouse, adult family member, or other responsible party) if the employee is unable to do so personally.

This provision contains no requirement that there be exigent circumstances, as Defendants' policy requires.  The requirement is, itself, completely unclear and provides no guidance about what it believes would qualify.  As in the instant case, this leaves it

14

open to abuse and misinterpretation.  The policy does not treat notice for FMLA leave any differently than any other kind of leave, and even if it did, Defendants interference with Plaintiff's FMLA gave them the false confidence of believing she couldn't even invoke the protection of the FMLA.

Courts have found that when an employer's requirements directly conflicts with the FMLA, it renders the employer policy invalid.

> The regulations implementing the FMLA provide that when an employee's need for FMLA leave is unforeseeable (as [Plaintiff's] was), "[n]otice may be given by the employee's spokesperson (e.g., spouse, adult family member, or other responsible party) if the employee is unable to do so personally." Id. § 825.303(a). Because this regulation expressly condones indirect notification when the employee is unable to notify directly, [Defendants'] policy conflicts with the FMLA and is therefore invalid to the extent it requires direct notification even when the FMLA leave is unforeseen and direct notification is not an option.

*Millea v. Metro-North R.R.*, 658 F.3d 154, 161-62 (2d Cir. 2011)

Here, Defendants Martinez and Paulk marked Plaintiff AWOL because they received notice of her need for FMLA leave from her husband, not Plaintiff directly, when Plaintiff's condition worsened on March 1, 2023.  Plaintiff became incapacitated and so her husband sent a text message from Plaintiff's phone, identifying himself as the sender and stating that her condition had worsened and she would not be in at all.  The record shows that Plaintiff's husband had given notice for her in the past with no issues, so the fact that Defendants claim to have been suddenly following their policy while they were also interfering with Plaintiff's FMLA certification reflects their clear intent to cause harm to Plaintiff, likely hoping to terminate her before she was officially approved for FMLA.  Such differences in Defendants attendance policy means that while Defendants are failing to properly designate Plaintiff's leave as FMLA

15

qualifying, even if they substitute LWOP for those absences, they can, and did, impose more stringent notification requirements for LWOP absences than they are allowed by federal law for FMLA absences. This did harm Plaintiff, it prevented her from using paid leave she had available, and subjected her to further potential discipline by being marked AWOL. It does not, and did not, make Plaintiff whole when Defendants eventually retroactively designated Plaintiff's FMLA absences because Plaintiff was denied the many benefits and protections of FMLA at the time she took the leave.

Plaintiff was also forced to retain an attorney just to get her FMLA properly certified and even then, it took Defendants more than 3 additional weeks and at least two attorney communications to admit their mistake and certify Plaintiff for her 23-24 FMLA year. This caused economic damage to Plaintiff. Surprisingly, when Plaintiff sought to be reimbursed for the costs associated with enforcing her FMLA rights, Defendants claimed that the FMLA did not allow for attorney's fees and refused. Plaintiff had no choice but to file suit in an attempt to recover her damages. Unfortunately, Defendants again interfered with Plaintiff's FMLA rights the following year, which caused Plaintiff additional damages.

### B. Defendants interfered with Plaintiff's FMLA again in 2024, while already being sued in this Court for FMLA interference.

Courts have held that the estimate of expected leave on FMLA certification forms for intermittent leave should not operate as a limitation on the employee's right to take leave for their FMLA qualifying condition. In *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 843 (7th Cir. 2014), the Court stated:

16

> We reject the argument that the estimates in the certification act as limitations on the frequency and duration of episodes for which an employee may be entitled to intermittent leave under the FMLA. The certification requested, and Dr. Post provided, his "estimate" of the frequency of the flareups and duration of related incapacity. See 29 C.F.R. § 825.306(a)(7) (requiring a certification for intermittent leave to include "an **estimate** of the frequency and duration of the episodes of incapacity") (emphasis added).

The Court continued:

> As the district court correctly stated, an estimate, by definition is not exact and cannot be treated as a certain and precise schedule. If the certified frequency and duration were limits on the employee's entitlement to leave, there would be no need to request recertification when the employee's requested leave exceeded the frequency or duration stated in the certification; the employer could simply deny FMLA leave. (internal quote and citations omitted)

If an employer is concerned that an employee's use of FMLA is different than expected, they may request that the employee obtain a recertification from their medical provider. 29 C.F.R. § 825.308(c)(2) allows an employer may request recertification when:  "Circumstances described by the previous certification have changed significantly (e.g., the duration or frequency of the absence, the nature or severity of the illness, complications)."

However, when recertification is requested, the employer must allow at least 15 calendar days after its request for the employee to provide the recertification, unless 15 days is not practicable under the circumstances despite the employee's good faith efforts. see 29 C.F.R. § 825.308(d) ("The employee must provide the requested recertification to the employer within the time frame requested by the employer (which must allow **at least 15 calendar days** after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts."(emphasis added))

17

If leave is not timely designated, an employer may retroactively designate leave, but only when their initial failure to designate that leave has not caused harm or injury to the employee. 29 C.F.R. § 825.301(d):

> Retroactive designation. If an employer does not designate leave as required by § 825.300, the employer may retroactively designate leave as FMLA leave with appropriate notice to the employee as required by § 825.300 **provided that the employer's failure to timely designate leave does not cause harm or injury to the employee**. In all cases where leave would qualify for FMLA protections, an employer and an employee can mutually agree that leave be retroactively designated as FMLA leave. (emphasis added)

GSD uses a 12 month FMLA year measured forward from the date an employee takes leave. Ex 5 FMLA Policy 6.3.2  "The 12-month period is measured forward from the date an employee uses any leave."  When an employee has used FMLA in the previous year, "The next 12-month period would begin the first time FMLA leave is taken after completion of any previous 12-month period" Ex 5 FMLA Policy 6.3.2.2

Here Plaintiff's 2023 FMLA year ended on January 17, 2024, which was 365 days after the 2023 year started.  Plaintiff submitted her 2024 application on January 23, 2024. She first took FMLA leave on January 26, 2024.   Defendants Morfin and Moya unlawfully denied Plaintiff FMLA leave on January 26, 2024 based on their erroneous understanding of their own FMLA year.  Next, on March 11, 2024, Defendants Morfin and Moya suddenly told Plaintiff that she had exhausted all her FMLA for that month and could not take leave in excess of her provider's estimate of "3-4" flare ups a month.  At the time, Plaintiff's mother was dying in hospice care in Ohio, and the stress of this caused Plaintiff to experience more migraines than usual. There is nothing in the record to suggest that Defendants believed that Plaintiff was faking her condition and not really suffering from migraines.

18

However, even if Defendant' concern about Plaintiff's increased need for leave was legitimate, the law, and their own policy, required them to request recertification and allow <u>at least</u> 15 calendar days before they could take any other action or deny leave.  Plaintiff quickly made an appointment with her provider for recertification, but was unable to be seen until April 29, 2024.  Plaintiff immediately notified Defendants that she would not be able to provide a recertification until that time, despite her good faith efforts. To comply with federal law, Defendants should have continued to timely designate Plaintiff's absences as FMLA qualifying until Plaintiff was able to provide the recertification.  There is nothing in the record to suggest that Defendants believed that Plaintiff would be unable to provide certification or that she wasn't really trying to do so. Instead, Defendants began denying Plaintiff's FMLA leave within 7 days of their request.

To make matters worse, Defendants Moya and Morfin imposed an arbitrary and baseless restriction on the use of Plaintiff's donated annual leave, claiming that she could only use that donated paid leave concurrent with the FMLA leave they were unlawfully denying her.   There is nothing in the State Personnel Act, the NMAC or Defendants' own donated leave policy which requires that donated leave can only be used when FMLA leave is used.  Even if it did, it was Defendants who were actively interfering with the proper designation of Plaintiff's leave as FMLA.  They had no reason to believe that Plaintiff's absences were for any reason other than her qualifying conditions.

Defendants intentionally denied Plaintiff FMLA protected leave in January, March and April 2024.  They had no legitimate legal basis to restrict or deny Plaintiff's use of FMLA, and failed to comply with the law or their own policy in order to give Plaintiff time to obtain a recertification.  They had knowledge that Plaintiff's mother was dying and yet they acted with

19

complete disregard for Plaintiff's situation, making her life harder and more stressful instead of acting with compassion. Defendants admit that they did not comply with requirements when seeking recertification. There are no facts that suggest that Defendant Moya or Morfin believed Plaintiff was abusing FMLA and/or using it improperly.    Defendants Morfin and Moya intentionally restricted and denied Plaintiff's FMLA rights, which constitutes interference as contemplated by the law, and is subject to liquidated damages.

### C.    Defendants' unlawful interference prejudiced Plaintiff

Plaintiff was prejudiced by Defendant Paulk, Martinez, LeBlanc and Moya's unlawful interference with her rights under the FMLA.  In 2023, it took 2.5 months and Plaintiff retaining an attorney for Defendants to properly certify her for her 2023/2024 FMLA year.  During Defendants unlawful interference during those 2.5 months, Plaintiff was threatened with potential discipline by being marked AWOL and denied the use of available paid leave even after Defendants retroactively designated FMLA. During the 2.5 months Defendants refused to allow her to take FMLA protected leave, Plaintiff was discouraged from taking leave she otherwise would have taken, suffering through the work day despite her federal right to take leave because of her medical condition.  She had to pay out of pocket for attorney's fees to get this accomplished and for which Defendants refused to reimburse her.

In 2024, when Defendants interfered with her FMLA rights for the second year in a row, Plaintiff was prejudiced by being denied the use of available donated paid leave she would have used in the months of March and April, but was forced to take unpaid leave for those absences instead.  Plaintiff lost wages for those absences, and incurred more legal costs associated with

20

adding the new violations into the already existing lawsuit.  Plaintiff has continued to accrue attorney's fees as a result of Defendants interference.

### III.    Conclusion

In light of the foregoing record evidence, precedent, and arguments, Plaintiff Hunt-Brown respectfully requests that the Court grant her judgment on her on Count III-FMLA Interference, award her attorney's fees and costs associated with Count III, and for such further relief the Court deems just and appropriate under the circumstances.

Respectfully Submitted.

Heather Burke
Attorney at Law
1000 Cordova Place #24
Santa Fe, NM 87505
(505) 428-9424
heather@hburkelaw.com

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed to be served upon opposing counsel of record through the Court's e-file and serve system on this 15th day of August 2025.

Respectfully Submitted.

21

Heather Burke
Attorney at Law
1000 Cordova Place #24
Santa Fe, NM 87505
(505) 428-9424
heather@hburkelaw.com