EXHIBIT

**10**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KIMBERLY HUNT-BROWN,

     Plaintiff,

    vs.          NO: 23-CV-00782 SMD-KK

NEW MEXICO GENERAL
SERVICES DEPARTMENT, and
VALERIE PAULK, EUNICE
MOYA, JENNIFER MORFIN,
VANESSA LEBLANC, AND
NATALIE MARTINEZ, in their
individual capacities,

     Defendants.

DEPOSITION OF VALERIE PAULK
March 14, 2025
9:06 a.m.
119 E. Marcy Street, Suite 110
Santa Fe, New Mexico

PURSUANT TO THE FEDERAL RULES OF CIVIL
PROCEDURE, this deposition was:

TAKEN BY: HEATHER BURKE
    Attorney for the Plaintiff

REPORTED BY: Robin A. Brazil, RPR, NM CCR #154
    Bean & Associates, Inc.
    Professional Court Reporting Service
    201 Third Street, Northwest, Suite 1950
    Albuquerque, New Mexico 87102

(365P) RAB

### 142

A. I don't recall.

Q. Was it about as frequently as you sent to Ms. Hunt-Brown or less frequently?

A. I honestly do not recall.

Q. Can you give any example of another employee that you sent emails like this to?

A. I don't know. I do recall sending one to maybe Raelynn, Theresa --

Q. Mandibles?

A. Uh-huh.

Q. We'll come back to this.

MS. BURKE: Do we have other copies of the texts? I thought I handed you all --

MR. BROWN: There were three of them.

MS. BURKE: There was only the three pages or three different pages -- three different groups? Because I'm not seeing it unless it's -- unless I'm crazy, which is possible.

Oh, it's right there. That's fine. We've confirmed.

(Exhibit 15 marked.)

Q. (By Ms. Burke) Exhibit 15. Exhibit 15 is a text chain. There isn't a date at the top. The date on the third page tells us the next day was March 2nd.

### 143

The first text: Took meds. Plan to be in later. Will let you know when I start working FMLA.

You ask: Kim, was your FMLA approved? And then six minutes later you say: Just confirmed that your FMLA is not approved. It will have to be regular sick leave.

The next text says: This is Joe, Kim's husband. She will not be in today at all.

And you respond: Okay. Thank you.

And Natalie Martinez's office says: Thank you, Joe. Hope she gets to feeling better.

And the next day you say: Kim, just want to confirm that you are working.

Do you remember this text chain?

A. I do. I just don't know if some of the dates are missing.

Q. The first date is. But the next day, based on your texts confirming she's working, was March 2nd. And that was March 1st, is what we understand to be the date these texts were exchanged from everybody. We haven't received them from you guys, so we only have this.

A. What I'm saying is, this -- okay. Yes, I do remember.

Q. Okay. Can you explain to me what was

### 144

going on here?

A. Kim called in. I was confirming that her FMLA was approved. Then I checked with HR. HR said no. That's why I responded to her, letting her know I checked with HR so she would know her FMLA had not been approved.

And the other texts are responding to the text sent by her husband.

(Exhibit 16 marked.)

Q. Exhibit 16. Exhibit 16 is just forwarded emails, but the first in the chain appears to be the last page, which is marked KHB 51. It's Valerie Paulk to Kimberly Hunt-Brown, cc'ing Natalie Martinez.

And you say: Good morning. Please update your time sheet before noon. Time runs at the top of every hour. Thank you.

Why did you send that email?

A. Because she needed to update her time sheet. She was probably off and had not entered her time.

Q. And Ms. Hunt-Brown responds: Natalie said she'd send me a written explanation of which time codes she needed me to use, but I haven't gotten that yet. Once I've got that, I'll happily do the

### 145

time sheet.

Do you know what codes she was waiting on?

A. I don't, because I don't know.

Q. So then there's some discussion about whether it needed to be put in writing. So Ms. Martinez sends Ms. Hunt-Brown an email at 12:31 p.m. on March 2nd, cc'ing you.

It says: As stated in our meeting this morning, you are to use the following codes for yesterday. 8:00 a.m. to 11:30 a.m., leave without pay, approved; and 11:30 to 5:00 p.m., AWOL.

Why was Ms. Hunt-Brown marked AWOL for March 1st?

A. I believe it goes back to the text message, because in the policy it states that the employee needs to communicate with the employee -- I mean with the supervisor, and in this particular situation, it was Kim's husband. And I believe Natalie confirmed with HR what she should do, and HR explained that it needs to be the employee that would send the message.

Q. So this wasn't your decision to mark her AWOL?

A. It was the supervisor's decision.

Q. The supervisor being Natalie Martinez?

146

A. We probably confirmed with HR before she did that. I can't remember the exact conversation, but I do know that HR said it needed to be the employee that reached out to the supervisor.

Q. Even if Ms. Hunt-Brown was unable to give notice as --

A. I think it says --

MS. DOWNEY: Objection. Form and foundation.

A. I believe in the policy it says exigent circumstances, and I don't know if nausea and vertigo are exigent circumstances or not.

Q. Are those part of Ms. Hunt-Brown's FMLA-covered conditions?

A. I don't know what her -- I never knew what her condition was. I never saw what the condition was on FMLA paperwork.

Q. Even though it states it on the FMLA paperwork, you didn't know?

A. We get the -- if I'm not mistaken, I think towards the end they started doing that. At the very beginning, I don't believe it did. I don't know that it actually states the medical condition or if it just states a condition. I don't know what it states.

147

Q. If it's your decision to decide whether it's exigent circumstances, wouldn't it be helpful to know if it's part of their condition?

A. That's probably why we reached out to HR, so that they could tell us whether or not we -- she could have put her on AWOL.

Q. So Ms. Hunt-Brown had noticed you that she was taking FMLA time, and -- and you reached out to HR, and they told you that she didn't have FMLA time; is that correct?

MS. DOWNEY: Objection.

Q. Is that what that says here --

MS. DOWNEY: Foundation.

Q. -- in Exhibit 15?

A. It says: I confirmed that the FMLA had not been approved, which at that time it had not been approved, so she would not have had FMLA, and she was calling in FMLA.

Q. What is your understanding of how the employer -- does the employer actually approve FMLA?

MS. DOWNEY: Objection. Form.

Go ahead.

A. Does the employer?

Q. Yes.

A. Meaning, like, HR?

148

Q. Well, in this case if that's who does it, yes.

A. So it's my understanding that the employee submits their packet to HR. HR works with the employee, and if they need additional information from the medical provider, they would do that without the supervisor -- supervisor's input, and then they would notify us once the -- so me signing -- me and Natalie signing the FMLA is just a formality, because they've already approved the FMLA.

Q. By approve, you mean certify?

A. I --

Q. Let's step back. Just in general you understand the Family Medical Leave Act is a federal right, correct?

A. Correct.

Q. So when an employer gets paperwork that documents an employee's serious health condition, they are certifying that that employee has that condition and qualifies for the federal right, correct?

A. I don't know what their process is or what they verify or certify.

Q. Okay. Let's see in their policy, which

149

is -- page six, 7.2, certification for need for leave. So it says: GSD will require completion of the most current version of the following federal certification forms as appropriate to the situation.

Is that correct?

A. That's what it stated here, GSD. So I worked for GSD, but I was not in HR.

Q. Okay. So who -- who did you talk to that told you that Ms. Hunt-Brown had not been approved for FMLA?

A. It was either Eunice or Kelly.

Q. And don't remember which?

A. No.

Q. Did they explain to you why they didn't -- why she was allegedly not approved?

A. No. They were still pending information.

Q. But based on -- exhibit number, which I didn't write down. I think it was early on. Maybe 4, is my guess, the application for FMLA leave. Ms. Hunt-Brown had applied for FMLA as of December 16, 2022, correct?

A. That's what the date is on it, yes.

Q. And you signed this on the 30th of May, 2022? Or 2023, I'm sorry.

A. March 30th?