EXHIBIT

16

exhibitsticker.com

**KIMBERLY HUNT-BROWN vs NEW MEXICO GENERAL SERVICES DEPARTMENT**

**Deposition of: Eunice  Moya    30(b)(6**

**Taken on: July 09, 2025**



**CUMBRE**

531 Harkle Road, Suite A
Santa Fe, NM 87505

505-984-2244

www.cumbrecourtreporting.com

KIMBERLY HUNT-BROWN vs NEW MEXICO GENERAL SERVICES DEPARTMENT    30(b)(6)
EUNICE  MOYA   30(B)(6)                     07/09/2025              23-CV-00782 SMD-KK

Page 34

Leave Act?

A.   Could you, please, ask me the question again?

Q.   Is GSD's prohibition on family members or friends giving notice consistent with the Family Medical Leave Act?

A.   I don't know.

Q.   And as we discussed a few minutes ago, the GSD's Family Medical Leave Policy doesn't say one way or the other whether or not an employee's family member is allowed to give notice for them; correct?

A.   There's no procedures when an employee is invoking.  I don't see it on the policy.

Q.   Now, you said a few minutes ago that you do internal HR training on the FMLA and you're considering doing more training than that internal training; is that correct?

A.   Yes.

Q.   What does that mean?

A.   We're going to -- we reached out to Workforce Solutions to have an individual come in and provide training to HR staff.

Q.   Just the HR staff?

A.   Supervisors and managers.

Q.   Supervisors, managers, and HR staff?

A.   Yes.

Page 35

Q.   And when is that going to take place?

A.   Gloria Quintana is working on the details.

Q.   Does that mean that there's no set time for that yet?

A.   We've reached out.  We're just trying to get on the calendar of the individual.

Q.   So Workforce Solutions is the entity in the State that does FMLA training?

A.   They're one of the resources.

Q.   What are the other resources?

A.   Probably -- I don't know.  Probably private trainers.

Q.   Has GSD explored getting private training?

A.   We reached out to this individual because they provided a training at one of the SHRM conferences that a couple of my staff members attended.

THE COURT REPORTER:  You said, "SHRM"?

THE WITNESS:  SHRM, S-H-R-M.

BY MS. BURKE:

Q.   And did you hear back from that person?

A.   Gloria's working directly with the individual, so I would have to follow up with her.  I know that we were trying to get on their schedule.  They agreed to come to our location and provide on-site training.  It was just a matter of ironing out the dates and time, date and time.

Page 36

Q.   So is that expected to happen in the near future?

A.   Yes.

Q.   Does anything in the Attendance and Leave Policy -- that's Exhibit 3 -- point managers to any specific resources if they have questions about whether or not leave should be designated as FMLA?

A.   Yes, they are directed to go to HR.

Q.   Where?

A.   7.3.23.

Q.   I'm sorry.  What was that number?

A.   7.3.23.

Q.   Is that telling the employer just to contact HR via after an employee is absent for more than three consecutive days?

A.   Yes.

Q.   Does it tell them to contact HR for any other reason regarding the FMLA?

A.   I do not believe so.

Q.   What is the difference between Leave Without Pay and FMLA leave?

A.   So Leave Without Pay is -- let me see.  On Family Medical Leave Unpaid?

Q.   Is Family Medical Leave paid or unpaid at GSD?

A.   So Family Medical Leave would be paid if an employee uses their own personal leave, and it's unpaid if

Page 37

they don't have time on the books.

Q.   Okay.  So if it's unpaid leave, what's the difference between that and Leave Without Pay?

A.   So the difference is Leave Without Pay is not based on Family Medical Leave, a medical emergency.  It's based on something outside of Family Medical Leave or if an employee isn't eligible for Family Medical Leave; they don't meet the criteria for Family Medical Leave.

The difference being is that an employee is responsible for their portion of the insurance benefits if they're on Family Medical Leave Unpaid.  They don't have enough time to cover their hours, to cover their absence.  The State would still continue to cover their portion of the insurance benefit.  If it's Leave Without Pay and they don't have any time reported, the employee is responsible for 100 percent of the insurance premiums.

Q.   Can Leave Without Pay be denied?

A.   Yes.

Q.   What are the reasons Leave Without Pay could be denied?

MR. LOMAN:  Object to form and foundation.

BY MS. BURKE:

Q.   Go ahead and answer.

A.   It would be based on operational needs.

Q.   What do you mean?

Case 1:23-cv-00782-SMD-KK    Document 99-17    Filed 08/15/25    Page 3 of 4

KIMBERLY HUNT-BROWN vs NEW MEXICO GENERAL SERVICES DEPARTMENT    30(b)(6)
EUNICE  MOYA    30(B)(6)                07/09/2025              23-CV-00782 SMD-KK

Page 110

condition."

Correct?

(Exhibit 18 was marked for identification.)

A.    Yes.

Q.    So if somebody later changed this back to FMLA Unpaid on Exhibit 17, would it leave the Absent Without Leave designation there even if there's no hours?

A.    That's a good question.  I would have to see the full pay period of the time sheet, before and after, before I could answer that question correctly because I don't know how it shows.

Q.    Okay.  And then Exhibit 17 it shows Ms. Hunt-Brown is otherwise Teleworking that week; correct?

A.    Yes.

Q.    Exhibit 19 are the associated text messages giving notice of the need for FMLA on that day.  The date for some reason got cut off from this top one, but on the second one down you can see March 2nd or the last page is the next day.

(Exhibit 19 was marked for identification.)

MR. LOMAN:  I'm going to object to form and scope on this.

MS. BURKE:  Okay.

//

Page 111

BY MS. BURKE:

Q.    We discussed the Attendance and Leave Policy's prohibition of family members giving notice; correct?

A.    Uh-huh.

Q.    We can see on the second page it says, "This is Joe, Kim's husband"; correct?

A.    Yes.

Q.    So why would the notice in Exhibit 19 -- or would the notice in Exhibit 19 be a violation of the Attendance and Leave Policy's notice?

MR. LOMAN:  Same objection.

THE WITNESS:  I don't know what the situation was at that time.  So if she was not -- at the beginning it says she was nauseous with vertigo.  "Took meds."  I don't know if she was sleeping because of the meds.  I don't know.

BY MS. BURKE:

Q.    But she did give notice of her need for FMLA; correct?

A.    Yes.

Q.    Earlier we talked about whether or not somebody who was exercising their need for FMLA would be marked AWOL under the notice policy.  Why would somebody trying to take FMLA be marked AWOL?

MR. LOMAN:  Same objection.

Page 112

THE WITNESS:  According to this text message Valerie asked her if the FML was approved.

"Just confirmed that your FMLA has not been approved.  It will have to be regular sick leave."

BY MS. BURKE:

Q.    And was Ms. Hunt-Brown's FMLA leave not approved because of a mistake made by the HR Department?

A.    Yes, it was.

Q.    So she should have been approved for FMLA at that time; correct?

A.    Yes.

Q.    Exhibit 20 is Defendant GSD's Responses to Plaintiff's Third Interrogatories and Third Requests For Production.  On the last page of this exhibit, there's a verification signed by Eunice Moya; correct?

(Exhibit 20 was marked for identification.)

A.    Yes.

Q.    Are you familiar with these responses?

A.    Yes.

Q.    In the answers and response to Interrogatory Number 9, Defendant's list several Bates numbers. Exhibit 21 is Bates Numbers 502 through 505, which is one of the Bates numbers listed in Exhibit 20.  Where on this document does it state that Ms. Hunt-Brown has an essential in-person function for her job?

Page 113

(Exhibit 21 was marked for identification.)

A.    What was your question?

Q.    Where on Exhibit 21 does it state that in-person attendance in Santa Fe is an essential function of Ms. Hunt-Brown's position?

A.    It doesn't say that.

Q.    Nowhere in Exhibit 21?

A.    No.

Q.    Exhibit 22 is GSD's Code of Conduct.  This is referred to in the response to Interrogatory Number 9 as Bates Number 612 through 624.  Where in this Code of Conduct does it State that Ms. Hunt-Brown's position has an essential function of in-person attendance at the Santa Fe office?

(Exhibit 22 was marked for identification.)

A.    7.2.1.  "Employee shall report to work on time, each scheduled workday or otherwise comply with the Department's policies and procedure regarding timekeeping..."

"Employees shall report to work able to perform essential job functions and meet applicable qualitative and quantitative standards for their jobs.  Reporting to work unable to perform these essential functions..."

Q.    And that was seven point --

A.    7.2.1 and 7.2.2.

Page 190

that now, preexisting employees wouldn't have to sign acknowledgement of those policies?

A.   No.

Q.   Even if those policies existed when they started?

A.   No.

Q.   So how does GSD make sure that all the employees know about their FMLA rights whether they're a manager or a non-manager?

A.   Just through the posters like I mentioned earlier, posters.  If they have questions, they go to the supervisors.  The supervisor directs them to us or most of time they come directly to HR too.

Q.   And HR hasn't had formal training in FMLA either yet; correct?

A.   Formal training.  So me sitting down with them, Gloria sitting down with them doing one-on-one doesn't count as formal training?

Q.   Well, is it documented?

A.   No.

Q.   How do you tell that that one-on-one training is effective?

A.   So it's a process.  Even though I sit down with you today and we go over the process -- we go over the process; okay?  This is how we -- X, Y, and Z, Family Medical Leave.  And then when a request comes in for that

Page 191

assigned division, then we sit down with them again, and we go step-by-step in processing.

I just don't train them the one time and say, "Go ahead and start processing."  It's a continuous training with them.  It's not just the one-on-one that we have to sit down with them multiple times until they're comfortable to administer it on their own.

Q.   How do you know if any of your HR staff is not applying the FMLA correctly?

A.   When the request is submitted, they're processing the paperwork, and either Gloria or I are confirming that the paperwork is -- we're acknowledging the paperwork and moving it on to the secretary for secretary approval.

Q.   The secretary approves the FMLA certification once it submitted; correct?

A.   The application.

Q.   That's the internal form, not the DOL form?

A.   Yes.

Q.   But the certification is the one that comes from the doctor; correct?

A.   Yeah.  That's not sent out.

Q.   So in this circumstance like we talked about earlier when Jennifer Morfin began denying Ms. Hunt-Brown FMLA in March of 2024, how did GSD make sure that Jennifer Morfin was following the FMLA Policy?

Page 192

A.   So when she was administering it, she asked me if that was correct; and my interpretation of the policy at that time, I felt we were in line with policy.  And so I approved the e-mails to be sent out.

Q.   Okay.  So she went to you for oversight, but then you both, together, misread the FMLA Policy that said that there needed to be at least 15 days?

A.   Yes.

Q.   And how is GSD -- is GSD taking any steps to try and prevent that from happening again?

A.   Yes.

Q.   How so?

A.   So we are looking -- Gloria's also looking for training for us as a whole.

Q.   For the FMLA training?

A.   For FML, yes.  And for ADA.

Q.   Are there any audits or anything that GSD runs to try and make sure that all of the policy -- the personnel policies are being followed appropriately?

A.   Can you give me an example?

Q.   Yeah.  Like for FMLA, is there any process to do, let's say, a spot check in the certification process or something?

A.   Oh, yes.  So those are actually done every pay period.

Page 193

Q.   For what?

A.   To ensure that the requests are being followed, that they're in compliance to ensure that there's no -- that an employee who was out on continuous leave is back.  So we keep track of the hours.  We keep track of the hours, and that's done every pay period.

Q.   And is there any spot check to make sure that managers are sending their employees to HR if they need time off for either their own medical condition or family member's medical condition?

A.   No.

Q.   So how does GSD know that managers are informing their employees of their rights?

A.   I don't know.

Q.   GSD doesn't know if their managers are?

A.   Yeah, I don't know.  Like I said earlier, they refer all of their employees anytime there's workers comp, ADA, FMLA.  Anything that is questionable, they call us up sometimes.

If they're out in the field, the supervisor will say, "So-and-so is a right here.  They have questions."  They'll hand the phone over, and we communicate with them like that.

Q.   Okay.  Now, from February 2023 through September 25th of 2024, have any complaints been made about denial