34

Q. So this difference is just whether or not it's protected by FMLA?

A. I would say whether it's coded as FMLA or not on the time sheet.

Q. Okay. And at the bottom of this chain, technically the beginning of it, she's notifying you that she has an upcoming medical appointment the following Monday afternoon, correct?

A. Uh-huh. Yes.

Q. Have you taken any FMLA training?

A. Not that I remember.

Q. There's no, like, SPO coursework on it for managers?

A. I don't know off the top of my head.

Q. Okay. But not since you've become a manager?

A. I don't believe so.

(Exhibit 7 marked.)

Q. Exhibit 7. Exhibit 7 is an email from Kimberly Hunt-Brown to Vanessa LeBlanc on May 29th, 2024, and the beginning of that chain is earlier that day at 12:12 p.m., and it appears to be an auto-leave request.

You respond to that at 12:24, saying: Hi, Kim, according to my log your FMLA for the month of

35

May has been exhausted as of May 28th.

Can you explain your -- your log there to me?

A. So again, I was directed by HR that she could only use four days of FMLA a month.

Q. Okay.

A. So if my calculations were correct, she had exceeded those four days, I believe, but I would need to look further into it.

Q. Okay. So you were doing it as of four eight-hour days?

A. Correct.

Q. So you were saying even though she had taken four, like, different days, those didn't count as a day until it was eight hours?

A. Correct.

Q. And you hadn't received any notice that Ms. Hunt-Brown's leave had been fully approved without restriction?

A. Her -- like her time sheet leave?

Q. For her FMLA leave.

A. No, I had not.

Q. And so when Ms. Hunt-Brown told you time-recorded FMLA is no longer exhausted, what did you do in response to that?

36

A. I don't remember.

Q. Did you reach out to HR to check?

A. Possibly, but I don't remember.

Q. Okay. But after that did -- was she able to take FMLA leave as needed?

A. I don't remember when that happened, but I did receive an updated FMLA, I guess allowable time from HR.

(Exhibit 8 marked.)

Q. Exhibit 8. Exhibit 8 is employee evaluation, fiscal year '24. The discussion date about a third of the way down says May 3rd, 2024.

Are you familiar with this document, Ms. LeBlanc?

A. Yes.

Q. What is the purpose of this document?

A. I believe this was a closing evaluation, or actually an interim, I'm sorry.

Q. What is an interim application?

A. It is, I believe, where we meet every three months to go over the employee's performance.

Q. Okay. And do you meet with all of your employees for that amount of time?

A. No.

Q. Why not?

37

A. There's no need to.

Q. What do you mean, there's no need to?

A. I -- I have not had a reason to meet with any of those employees on an interim schedule.

Q. Isn't an interim evaluation just part of the state personnel review process?

A. I would -- I believe so.

Q. So they don't need to have evaluations?

A. They don't require interim evaluations. They only require opening and closing.

Q. Okay. And what makes Ms. Hunt-Brown require an interim?

A. Because she's on -- I wouldn't say a work plan, but she's required to meet with me on a weekly basis, so I was instructed by my supervisors to have interim evaluations with her.

Q. Okay. So Ms. Hunt-Brown is essentially on a performance improvement plan?

A. I don't know if she's officially on one. That's just what I've been instructed by my supervisors.

Q. So unofficially, though, what would be the difference if an employee was on a performance improvement plan? Would they have interim evaluations?

38

A. I'm not too sure.

Q. Have you ever put an employee on an interim --

A. No.

Q. -- on a performance improvement plan?

A. No.

Q. Have you ever been on a performance improvement plan?

A. No.

Q. So Ms. Hunt-Brown is treated differently than your other employees by having an interim evaluation?

A. I guess so.

Q. So at the bottom of this first page, it says one of the major goals for the next year is for Kim to complete her assignments, at minimum, in the timeframe listed above so that eventually weekly meetings are not required. Weekly workload review meetings are scheduled because her assignments are often pending buyer review for several days without any movement. Is that correct?

A. Yes.

Q. And does that several days take into account when Ms. Hunt-Brown has taken FMLA?

A. Say that again.

39

Q. Does that several days with no movement take into account if Ms. Hunt-Brown has taken any time off for FMLA?

A. Yes.

Q. So the several days would be in addition to that time?

A. Yes.

Q. And that's true for your other employees, that they have less time to get their stuff done?

A. They don't -- I don't -- I don't get what you're saying.

Q. Okay. So if -- how long does a buyer -- a pending buyer review typically take?

A. Buyer review should be done within the first three days of assignment.

Q. And how would -- how does that get affected if Ms. Hunt-Brown is out on FMLA?

A. It -- her assignment will just stay pending buyer review.

Q. For more than several days?

A. Yes.

Q. So when Ms. Hunt-Brown is having an interim evaluation because her reviews are pending for more than several days, that could be because she hasn't been in the office as much, right?

40

A. Not necessarily. She could be in the office for three days in a row, and her assignment could still be pending buyer review.

Q. But wouldn't that be because she was working on other assignments that were then knocked back because she was out?

A. I'm not too sure.

Q. I mean, how is Ms. Hunt-Brown supposed to prioritize her work if she's constantly having to play catch-up?

A. That's why we have those weekly meetings, so I can prioritize her work for her.

Q. Okay. But that's because she is having these assignments that continually are being delayed in completion, correct?

A. I guess so.

Q. So it says: Kim often struggles with completing her assignments in a timely manner, and her assignments are frequently reassigned due to the urgency of completion.

Is this saying that her assignments are reassigned because she's falling behind?

A. I would say so.

Q. Okay. And there's no discussion in this document anywhere about any accommodation for

41

Ms. Hunt-Brown's FMLA time, correct?

A. I don't believe it's required on this form.

Q. Okay. Would that be part of the discussion, though?

A. I don't believe her FMLA has ever came up in discussion during these evaluations.

Q. Do you think that they should come up?

A. I don't know.

Q. I mean, if somebody's out of the office regularly for leave, they can't do the same amount of work as somebody who's in the office full-time, correct?

A. I guess so.

MS. BURKE: Let's take a quick break. Five -- like ten minutes.

(Recess was taken from 9:53 to 10:00.)

(Exhibit 9 marked.)

Q. (By Ms. Burke) Exhibit 9 is the evaluation dated March 21st, 2024. It doesn't say whether it is an interim or final evaluation.

A. At the top here it says final.

Q. Thank you, ma'am. So was this the closing of the previous year?

A. Yes.