**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**


**KIMBERLY HUNT-BROWN**


**Plaintiff,**

**vs.**                                                              **Civ. No. 23-cv-00782 SMD-KK**


**NEW MEXICO GENERAL SERVICES DEPARTMENT,**

**And VALERIE PAULK, EUNICE MOYA, JENNIFER MORFIN,**

**VANESSA LEBLANC, AND NATALIE MARTINEZ,**

**In their individual and official capacities**

**Defendants.**


**PLAINTIFF'S REPLY IN SUPPORT OF HER PARTIAL MOTION FOR SUMMARY
JUDGMENT ON COUNT III: FMLA INTERFERENCE**

COMES NOW, Plaintiff Kimberly Hunt-Brown, by and through her counsel of record, Heather

Burke with her Reply in Support of her Motion for Partial Summary Judgment on Count III:

FMLA Interference.


**Defendants' Disputes of Plaintiff's UMF**

Defendants attempt to raise any dispute to Plaintiff's 54 Undisputed Material Facts in 6

numbered paragraphs. In those paragraphs, Defendants claim to dispute only 6 or 8 of the facts,

but for the reasons argued below, fail to raise any legitimate dispute as to those facts.

1

In **#1**, Defendants dispute Plaintiff's UMF 19, claiming without merit that Plaintiff's affidavit is a "sham" and contend that Plaintiff' never intended to be paid for March 1, 2023. Plaintiff's affidavit states she intended to use paid leave on March 1, 2023, which is consistent with the record. Defendants cite to deposition testimony where in which Mr. Loman asks Plaintiff "So whether we call it AWOL or FMLA unpaid, you're not getting paid that day, do we agree on that?" To which Plaintiff answer "yes." Mr. Loman literally asked Plaintiff if she would not be paid for an FMLA unpaid entry of time. The answer to that is, of course, yes. He did not ask her if she wanted to be paid that day, or if she intended to be paid that day. Mr. Loman did not ask Plaintiff what her repeated customary use of FMLA time was, which, like for most people, was to substitute her paid leave used concurrently with her FMLA leave. He did not show her exhibit 1, attached hereto, and ask her about it.

As Defendants are aware, Exhibit 26 shows that Plaintiff entered a comment into the SHARE time system on March 2, 2023 at 12:43 PM, stating:

> AWOLV and LWOPA codes entered by another user, not KAHunt-Brown (self); KAHunt-Brown was directed by Natalie Martinez to go into the timesheet and enter these codes instead of the FMLA codes that would have usually been entered to cover Annual Leave time taken due to illness because of a flare-up of her protected medical condition (Ex26)

Exhibit 1 is irrefutable evidence that as of March 2, 2023, Plaintiff attempted and intended to use annual leave for March 1, 2023, and her leave was changed by Defendants to LWOP and AWOL. Looking at Doc 105 Ex 2 which is a chart created by Defendants showing Defendants' retroactive FMLA designations, the Court can clearing see that for the 10 absences prior to March 1, Plaintiff had taken paid leave for her FMLA qualifying absences. Defendants then changed each entry to the FMLA paid time designation consistent with the leave Plaintiff had taken when she was denied FMLA. (Sick time, annual leave, etc) Because they had

2

prevented her from using paid leave on March 1, their improper retroactive designation kept the absence as unpaid.  It was never Plaintiff's choice to not use paid leave on March 1, 2023. Defendants purported "evidence" fails to raise a legitimate dispute as to UMF #19.

In **2**, Defendants dispute UMF 21, by claiming it is somehow "misleading."  They then make an argument about other leave, but don't attach any evidence that Defendants' policy does not state what Plaintiff fact alleges that it does.  They finish by making an unrelated argument about their unlawful retroactive designation of Plaintiff's absences, which has nothing to do with UMF #21. This fact is therefore unconverted.

In **3**, Defendants dispute UMF 27 by misrepresenting the stated fact.  This fact literally states that Defendants did not communicate or otherwise seek agreement with Plaintiff before unilaterally retroactively designating Plaintiff's absences as FMLA.   Defendants attach no evidence that they communicated or sought Plaintiff's involvement or agreement before they made the changes to Plaintiff's time.  Therefore, this fact remains uncontroverted.

In **4**, Defendants claim to dispute UMF 28.  Defendants state "Plaintiff was never discouraged or prohibited from taking a sick day for her FMLA-qualifying medical condition when she needed it."  Even if it were true, this is not material to the claims at issue.  This is an FMLA interference lawsuit.  Plaintiff has produced irrefutable evidence of Plaintiff being repeatedly denied FMLA leave for her covered absences, including being marked AWOL, which policy states will subject her to discipline, and having to obtain discretionary permission for LWOP. She was also denied the use of available paid leave for her FMLA covered absences, expressly because Defendants were interfering with her leave and not letting her properly designate those absences as FMLA protected. Defendants argue that because Plaintiff continued to take leave, that this somehow means that their interference didn't discourage her from taking all the leave

3

she might have taken. That Plaintiff had to take some leave despite the risk in doing so is not the same thing as Plaintiff being able to take all the leave she would have liked to take. Defendants produce no evidence which contradicts Plaintiff's statement that she was discouraged from taking leave she otherwise would have taken.

Defendants then claim that UMF 28 contradicts UMF 7, as though they want this Court to forget that Plaintiff is having to sue for two different years and methods of interference, in which Defendants unlawfully interfered with her FMLA. In 2023, Plaintiff continued to designate her leave as FMLA qualifying, until Defendant Moya directed Kelly Howley to go into Plaintiff's time and change all of the FMLA time coded by Plaintiff to unprotected leave. [Doc 99 Ex 12] Defendants point to Plaintiff's testimony about whether any absences were coded with sick time or LWOP, while Defendants were interfering with her FMLA. Plaintiff has not averred that she did not take any absences while they interfered with her FMLA, she is stating that she was not able to take all of the leave she otherwise would have, but for Defendants' unlawful interference. The two facts are not contradictory.

Defendants do not attach any evidence which disputes whether Plaintiff took all of the FMLA leave she would have taken, had Defendants not interfered with her FMLA rights. Therefore UMF #28 is uncontroverted.

In **#5**, Defendants improperly dispute 3 different facts (47, 49 and 50) in one paragraph without listing evidence specifically to refute it. Facts that are not specifically controverted are deemed undisputed. Citing to Plaintiff's testimony that she <u>eventually</u> was able to use her donated leave is not evidence refuting the fact that she was not allowed to use it when she wanted to and needed it most, while her mother was dying and she was out of the office much more than usual. Defendants also produce no evidence of any policy that requires that donated leave only be used

4

when FMLA leave is allowed to be used, as they insisted to Plaintiff, or any evidence that Plaintiff was not forced to seek LWOP or that she was allowed to use paid leave for those absences.  As Defendants failed to properly dispute UMF 47, 49, and 50, these facts remain undisputed.

In **#6**, Defendants refute UMF 54.  Incredibly, Defendants tell this Court that they "meant" to retroactively designate Plaintiff's leave but didn't, and then disclose that **they went back in July 2025** and **altered Plaintiff's timesheets without communication or her permission**.   Worse, they didn't even do so correctly. See Ex 27, Plaintiff's log of Defendants July 2025 changes to her time records.  Defendants cite to an unattached affidavit of an unknown individual, so this Court cannot consider this fact properly controverted.  However, the fact that Defendants waited until just before the summary judgment deadline and went back into Plaintiff's time records and changed the evidence to try to reflect more favorably on themselves is enormously problematic.  As already argued, federal law prohibits retroactively designating time if their failure to properly designate it in the first place caused Plaintiff harm.  There is no dispute that it did because Plaintiff has been suing Defendants for that harm. Plaintiff had to amend her complaint to include new allegations of interference in 2024, after she was already suing Defendants to enforce her federal rights.

### Response to Defendants Alleged Material Facts

Defendants do not include their own additional facts in their Response to Plaintiff's Motion. They instead, state that they incorporate the material facts 13-22 from their own Summary Judgment Motion into their response. Plaintiff has already responded to those alleged material facts, in her own Response to that Motion.  She incorporates her response to Defendants Material facts in Document #105 as though set forth herein.

**<u>Argument</u>**

As an initial matter, Defendants gratuitously throw around the phrase "sham affidavit" but fail to establish any actual material conflict between Plaintiff's affidavits and her deposition testimony.  There is no truth to their allegations.

As already argued, "A plaintiff on an FMLA interference claim must establish the following: (1) that he was entitled to FMLA leave; (2) that some adverse action by the employer interfered with his right to take FMLA leave; and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights." *Dalpiaz v. Carbon County*, 760 F.3d 1126, 1132 (10th Cir. 2014).  Here, parties do not dispute that Plaintiff was entitled to take FMLA leave in both 2023 and in 2024.  Parties do not dispute that Plaintiff tried to take FMLA leave in 2023 and 2024, and that Defendants prevented her from taking FMLA protected leave, and told her that she could not take FMLA leave. As Defendants agree, "In order to satisfy the second element of an interference claim, the employee must show that she was prevented from taking the full 12 weeks' of leave guaranteed by the FMLA, denied reinstatement following leave, or **denied initial permission to take leave**." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007)(emphasis added).

Loss of pay is well recognized as being materially adverse. In *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 73, 126 S. Ct. 2405, 2417 (2006), the Supreme Court found that an unpaid suspension remained materially adverse even after it was rescinded and the employee had received backpay. Similarly, being placed on involuntary unpaid leave is also recognized as an adverse action. See *Green v. Donahoe*, 760 F.3d 1135, 1137 (10th Cir. 2014) (being put on unpaid leave was a materially adverse action as it would dissuade a reasonable employee from engaging in protected activity); See *Dawson v. Akal Sec. Inc.*, 660 F. App'x 504, 506 (9th Cir.

2016) (an adverse action where the employee is placed on unpaid leave involuntarily) *O'Toole v. Ulster Cnty.*, No. 1:12-CV-1228 (LEK/RFT), 2014 U.S. Dist. LEXIS 138045, at *29 (N.D.N.Y. Sep. 30, 2014) (Defendant could not show that involuntary, unpaid leave did not constitute an adverse action.)

Here, there is no legitimate dispute that Defendants unlawfully interfered with Plaintiff's FMLA, and Defendants have admitted to their mistakes under oath. Plaintiff was denied initial permission to take FMLA leave in both 2023 and in 2024. In 2023, Defendants repeatedly unlawfully rejected her FMLA certification forms, telling her that she could not "invoke" FMLA leave. In 2024, Defendants improperly started restricting the amount of FMLA leave Plaintiff could take in a month, and instead of allowing her time to obtain another medical certification, began immediately denying her FMLA leave. In addition, they improperly conditioned the use of Plaintiff's available donated paid leave on whether they were allowing her to use FMLA leave for that absence. Obviously, attempting to take FMLA leave, and being told you cannot take FMLA leave is clearly related to the attempted exercise of FMLA rights. This unlawfully discourages employees from taking FMLA leave. Interfering with an employee's exercise of his FMLA rights also includes discouraging an employee from using FMLA leave. See 29 C.F.R. § 825.220(b).

However, Defendants argue that their repeated violation of federal law didn't harm Plaintiff and thus, doesn't matter. They cite no legal support for that argument. Plaintiff was never paid for March 1, 2023, nor was she paid for March 18, 20, 22, and 26, 2024 or April 19, 29, or 30th 2024. Each of these dates Plaintiff indisputably qualified for, and should have been able to take FMLA leave, but each of those dates, Defendants interfered by denying Plaintiff her federal right to that leave. The fact that Plaintiff used paid and donated paid leave eventually

instead of when she intended to has nothing to do with whether having to go without pay on these dates as materially adverse. This is like arguing that an unpaid suspension is not an adverse action because the employee was eventually allowed to earn money again after the unpaid suspension. Everyone has bills to pay and it is critical when and how much we are paid. Particularly in 2024, when Plaintiff's mother was dying in hospice, and Defendants acted to discourage Plaintiff from taking leave by limiting how much she could take.  They made a bad situation worse for Plaintiff, and when she had no choice but to risk taking LWOP instead of paid leave concurrent with her FMLA leave, so she received substantially less money.

Because she was forced to take unpaid leave on March 1 2023, Plaintiff lost $281.69 in earnings. In March 2024, during the paid period between March 16 and March 29, was denied FMLA 4 times and had to take 22 hours of LWOP instead of FMLA leave.  Because she was prevented from using FMLA, Defendants Morfin and Moya also wouldn't let Plaintiff use her available donated leave (35.62 hours), or the annual leave (6.70 hours) she had available.  As a result, Plaintiff lost $862.17 in earnings, and her paycheck that period In April, Plaintiff yet again was denied FMLA leave, and earned $842.58 less even though she had enough paid leave available to cover those absences.  Defendants want this Court to believe that them forcing Plaintiff to earn $1704.75 less in March and April 2024 didn't harm her. In addition, the fact that Plaintiff was forced to earn less, also resulted in smaller contributions to her PERA retirement account which extends the damage to Plaintiff into the future.  Unlike the Defendants in *Burlington*, Defendants never reimbursed Plaintiff for her lost income, and that loss of income continues to prejudice Plaintiff.  There is no way in which losing nearly $2000.00 in earnings is not a materially adverse action.

8

In addition to the violations above, in both 2023 and 2024, Defendants violated federal law when they went back and unilaterally changed Plaintiff's time to retroactively designate her time to FMLA. Their action was particularly egregious for 2024, because they waited until Discovery had closed in July 2025, and then went back 1.5 years and changed Plaintiff's time records without her permission. As they were already being sued for these violations, they knew that Plaintiff was alleging that she had been harmed by their failure to timely designate her leave. To make matters worse, and likely directly because they failed to involve Plaintiff at all, Defendants didn't even properly retroactively designate Plaintiff's absences.  See Ex 27. Defendants failed to retroactively designate her absences on March 26, and April 29, 2024. Notably, April 29 was the absence to get the recertification demanded by Defendants, and is undisputably FMLA covered.  They also wrongly changed a normal non-FMLA paid sick day into unpaid FMLA time, and then it appears they charged Plaintiff's sick leave in 2025, which is at a higher pay rate, to illegally seize monetary value from her[1].  It is a mess. As the FMLA year for 2024 ended in or around January 2025, Plaintiff received no absolutely benefit from Defendants' dishonest actions, and it was solely done to attempt to falsify the record and cover up their violations.   Defendants self-serving changes to Plaintiff's time evidence their bad faith, and clear belief that blatantly violating the federal rights of their employees will carry no consequences for them at all.  This cannot be allowed to be true, or the law loses all meaning.

There is simply no legitimate dispute of fact as to the elements of Plaintiff's FMLA interference claims. Defendants admit they did not follow the law, and Plaintiff was prevented from using available paid leave directly because of Defendants' violations. No reasonable jury could find that it is not a materially adverse action to prevent an employee from using hundreds

---

[1] This may constitute illegal conversion.

9

or thousands of dollars in available paid leave as a direct result of denying them the FMLA leave they are entitled to.

## Conclusion

For the reasons argued herein, Plaintiff respectfully requests that this Court grant her Motion for Partial Summary Judgment on Count III: FMLA Interference, and award her damages, attorney's fees and costs associated with this claim and for whatever other relief this Court finds proper.

Respectfully Submitted.

Heather Burke
Attorney at Law
1000 Cordova Place #24
Santa Fe, NM 87505
(505) 428-9424
heather@hburkelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed to be served upon opposing counsel of record through the Court's e-file and serve system on this 12th day of September 2025.

Respectfully Submitted.

Heather Burke
Attorney at Law

10

1000 Cordova Place #24
Santa Fe, NM 87505
(505) 428-9424
heather@hburkelaw.com