## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

KIMBERLY HUNT-BROWN,

      Plaintiff,

v.                                   No. 1:23-cv-00782-SMD-KK

NEW MEXICO GENERAL SERVICES DEPARTMENT,
VALERIE PAULK, EUNICE MOYA, JENNIFER MORFIN,
VANESSA LEBLANC, and NATALIE MARTINEZ,

      Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND FOR SANCTIONS

**THIS MATTER** is before the Court on Defendants' motion for summary judgment (Doc. 98) and Plaintiff Kimberly Hunt-Brown's partial motions for summary judgment on Count III (Doc. 99) and Counts I, II, and V (Doc. 100). Defendants responded to both of Plaintiff's motions (Docs. 103 and 104) and Plaintiff responded to Defendants' motion (Doc. 105). The parties then filed their replies. Docs. 107, 108, 109. Plaintiff also filed a motion for sanctions under Rule 37. Doc. 114. Upon review of the parties' motions, the relevant law, and the factual record, the Court hereby **GRANTS** Defendants' motion for summary judgment as to Counts III, IV, and V. The Court **DENIES** Defendants' motion for summary judgment as to Counts I and II. The Court **DENIES** Plaintiff's partial motions for summary judgment and motion for sanctions.

## BACKGROUND

The dispute presented before the Court today arises from a series of interactions between Plaintiff, who works as a procurement agent at the New Mexico General Services Department, and her employer and supervisors at GSD. Plaintiff suffers from multiple sclerosis and chronic migraines. These conditions have long impacted her ability to work at GSD and have necessitated

that she take protected leave under the Family and Medical Leave Act ("FMLA"). *See* 29 U.S.C. § 2601. In 2023 and again in 2024, Plaintiff struggled to renew her FMLA certification. This difficulty was in part the result of GSD's failure to comply with FMLA procedure and its insistence that she obtain unnecessary information to recertify her condition. Additionally, Plaintiff and Defendants have been in a stalemate over Plaintiff's ask to occasionally work from home when her migraine medication makes driving to the office unsafe. Because Defendants have refused to permit Plaintiff to telework, she has been forced to take entire days off work simply because she cannot drive. Plaintiff also alleges that Defendants have denied her a promotion multiple times because of her age and owe her wages for one day in 2024.

During the course of this litigation, Plaintiff deposed several of the Defendants to ascertain whether GSD is consistent in its denial of telework across all employees. Defendant Moya testified that GSD does not allow telework. Doc. 100, Ex. 7. In a later deposition, Defendant Moya admitted that she had teleworked for four weeks following knee surgery. Doc. 114 at 3–4. Similarly, Defendant Martinez testified that some supervisors, including Defendant LeBlanc, will telework on occasion. *Id.* at 5. Plaintiff also submitted a discovery request for "all daily GSD Network VPN connection logs from February 2023 to present." *Id.* at 8. GSD objected to the request and explained that GSD does not actively store logs related to VPN access. *Id.* at 8–9. GSD's Chief Information Officers, Alex Harding, submitted an affidavit confirming this statement. Doc. 114, Ex. 3. Plaintiff then sought to compel a deposition of Mr. Harding, which was denied. Doc. 140. Plaintiff now seeks to sanction Defendants under Rule 56(h) for submission of perjurious or blatantly false affidavits. Doc. 114 at 11 (citing Fed. R. Civ. P. 56(h)). As relief, Plaintiff seeks default judgment because it is "truly the only proper remedy for such egregious conduct." Doc. 114 at 17.

**LEGAL STANDARDS**

I.      Sanctions

Rule 56(h) permits a court to impose sanctions if an affidavit or declaration submitted in support of or in opposition to a motion for summary was filed in bad faith or solely for the purpose of delay.  Fed. R. Civ. P. 56(h).  "The Tenth Circuit has held that for a finding of bad faith intent is required, and negligence or mistake cannot supply the necessary showing of bad faith."  *Harris v. McCurtain Cnty. Jail Trust*, 2025 WL 2963948, at *1 (E.D. Okla. Oct. 21, 2025).  Further, the Advisory Committee Notes clarify that sanctions under Rule 56(h) are "discretionary, not mandatory, reflecting the experience that courts seldom invoke the independent Rule 56 authority to impose sanctions."  Fed. R. Civ. P. 56(h) advisory committee's note to 2010 amendment.  If sanctions are imposed, the court may require the submitting party to pay the other party reasonable expenses, including attorney's fees.

II.     Summary Judgment

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Butler v. Daimler Trucks N. Am., LLC*, 74 F.4th 1131, 1140 (10th Cir. 2023).  The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once this requirement is met, the non-movant can defeat summary judgment by showing that there is a genuine dispute of material facts.  *Id.*  The non-movant's response must "set forth specific facts by reference to affidavits, deposition transcripts, or other exhibits to support the claim."  *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006).  The court then reviews the proffered evidence and, drawing all reasonable inferences in favor of the nonmoving party, determines whether the facts "establish, at a minimum,

an inference of the presence of each element essential to the case." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001). Where, as here, the parties have filed cross motions for summary judgment, the court considers the motions independently of each other, such that "[t]he denial of one does not require the grant of another." *Christian Heritage Academy v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025 (10th Cir. 2007).

## STATEMENT OF MATERIAL FACTS

Plaintiff alleges five counts. *See* Doc. 43 ("Am. Compl."). Count I is for unlawful discrimination on the basis of disability in violation of the New Mexico Human Rights Act ("NMHRA"), N.M. Stat. Ann. § 28-1-7(A). *Id.* at 18–21. Count II is for failure to accommodate in violation of the NMHRA. *Id.* at 21–23. Count III is for unlawful interference with Plaintiff's rights under the Family and Medical Leave Act ("FMLA"). *Id.* at 24–26. Count IV is for age discrimination under the NMHRA. *Id.* at 29. Count V is for violation of the New Mexico Minimum Wage Act ("NMMWA"). *Id.* at 30. Defendants move for summary judgment as to all counts. Doc. 98. In their motion, Defendants ask for summary judgment on a hostile work environment claim, but Plaintiff does not assert that claim in her complaint nor address it in her response to Defendants' motion. Doc. 98 at 17; *see* Am. Compl. The Court finds Defendants' motion for summary judgment regarding an alleged hostile work environment to be moot. Plaintiff moves for summary judgment as to Counts I, II, and V in one motion, (Doc. 100), and Count III in a second motion (Doc. 99). However, Plaintiff does not allege any material facts regarding the NMMWA claim. Accordingly, the Court considers only the Defendants' undisputed material facts ("UMF") and Plaintiff's response when recounting Count V's pertinent facts.

Plaintiff objects to most of Defendants' facts as "improperly compound," meaning a numbered statement "includes multiple facts in violation of D.N.M.LR-Civ. 56.1," and is therefore

"impossible to properly answer." *See, e.g.*, Doc. 105 ¶ 1. "Improperly compound" is not a valid challenge to a proffered fact nor a practical hurdle to disputing Defendants' UMF. Plaintiff has not identified any authority, and the Court cannot locate any, prohibiting a party from including multiple facts within a numbered statement. The Local Rules are of no help in substantiating Plaintiff's position—despite her frequent citation to them—as they never mention compound facts. *See* D.N.M. LR-Civ. 56. The Court therefore disregards all objections Plaintiff makes on this ground. Additionally, Plaintiff disputes numerous facts on legal, rather than factual bases. For instance, Plaintiff agrees that Defendants retroactively designated her leave as FMLA protected, but argues that doing so violated the law. These contentions are not well-taken and are not considered disputes of fact. *See Glassock v. McCotter*, 56 F. App'x 452, 453 (10th Cir. 2003). Defendants accuse Plaintiff of submitting a sham affidavit to create a dispute of material fact. Doc. 107 at 1. Because the Court does not rely on Plaintiff's affidavit in reaching its conclusions, it does not consider this argument.

A.  FMLA Leave

Plaintiff began working for the New Mexico General Services Department ("GSD") in May of 2014 as a procurement agent. Doc. 98 ¶ 1; Doc. 99 ¶ 1. Plaintiff has multiple sclerosis and debilitating migraines. Doc. 98 at 1. These conditions are covered under the FMLA and Plaintiff has received protected leave, meaning she is permitted to take reasonable unpaid leave from work without retaliation, since around 2017. *Id.* ¶ 1. On December 13, 2022, Plaintiff's FMLA certification was set to expire. *Id.* ¶ 13. Plaintiff submitted a request for renewed FMLA leave to Kelly Howley, one of GSD's human resource employees. *Id.*; Doc. 105 ¶ 13. Ms. Howley informed Plaintiff that more information was needed to approve her FMLA leave. Doc. 98 ¶ 14; Doc. 105 ¶ 14. Multiple delays, including Plaintiff's medical provider being out of the office for

5

a month and GSD's failure to understand Plaintiff's medical certification form, prevented GSD from certifying Plaintiff's FMLA leave until March 30, 2023. Doc. 98 ¶ 16; Doc. 105 ¶ 16; Moya Dep. 57:4–6. During that interim, Plaintiff took leave as needed and coded it as Leave Without Pay ("LWOP"). Doc. 98 ¶ 15; Doc. 105, Ex. 3. GSD recoded these days as FMLA protected leave after it granted her FMLA certification in March of 2023. Doc. 98 ¶ 16; Doc. 105 ¶ 16. Both the FMLA leave and the LWOP were unpaid.[1] Doc. 98 ¶ 17. In 2024, a similar chain of events unfolded: Plaintiff attempted to recertify her FMLA leave, GSD misunderstood her provider's authorization as only permitting four days of leave per month, Plaintiff secured an updated authorization from her provider, and GSD updated her FMLA leave permission to a maximum of thirty-one days per month. *Id.* ¶¶ 18–21.

### B. Telework Accommodation

GSD operated under a telework policy, in response to the COVID-19 pandemic, until the end of 2022. Doc. 98 ¶ 23. After that policy was lifted, Plaintiff asked to continue working from home due to her heightened COVID vulnerability. *Id.* ¶ 24. GSD granted Plaintiff a six-month extension for telework. *Id.* ¶ 25; Doc. 105 ¶ 25. The extension was set to expire on August 2, 2023. Doc. 98 ¶ 26; Doc. 100 ¶ 5. On July 31, 2023, Plaintiff met with Defendant Eunice Moya and manager Dorothy Mendonca to discuss extending the telework accommodation. Doc. 98 ¶ 26. Plaintiff explained that her migraines sometimes render her unable to work. Doc. 105 ¶ 28. When that happens, she takes migraine medication. Doc. 98 ¶ 28. The medication can take several hours to take effect. *Id.* Once it sets in, her migraine may go away and enable her to work, but the medication can hinder "her balance and depth perception, rendering her unable to drive for the rest

---

[1] Plaintiff repeatedly cavils that FMLA leave can be substituted with paid forms of leave, such as annual or sick leave, and that she lost compensation when GSD forced her to take LWOP. Plaintiff does not cite to the record for this contention and therefore fails to meaningfully dispute it. *See, e.g.*, Doc. 99 at 13 (arguing, without citation, that "[b]eing forced to take an unpaid absence instead of a paid absence is an adverse action.").

of the day." *Id.* Plaintiff submitted a formal ADA request, asking that GSD allow her to work from home after her migraine resolves, rather than take FMLA leave for the entire day. Doc. 100 ¶ 9.

GSD denied Plaintiff's request. Doc. 98 ¶ 31; Doc. 100-3. GSD maintains that in-person attendance is an essential function of all non-manager and non-supervisor positions. Doc. 98 ¶ 37. However, managers, such as Defendant Moya, have worked remotely in limited circumstances. Doc. 105 ¶ 7; Doc. 107 ¶ L. GSD's decision to deny Plaintiff's request was not made with specific consideration for Plaintiff's position. Rather, GSD found telework to be presumptively impossible due to the blanket policy prohibiting remote work. Moya Dep. 90:8–17; Doc. 100 ¶¶ 10–11. When asked what essential functions of Plaintiff's position cannot be achieved through telework, Defendant Moya who serves as GSD's HR Director, said "I don't know." *Id.* 92:23–93:1. Defendant Moya further acknowledged that, during the pandemic, employees were able to perform most of their essential functions from home. *Id.* 92:17–22.

C.  New Mexico Minimum Wage Act

GSD employees can "flex their time," meaning adjust the start or end of their shift for a singular day while still working a full eight hours. On September 6, 2024, Plaintiff had a doctor's appointment that she needed to leave work early to attend. Doc. 98 ¶ 59. Plaintiff neglected to obtain her supervisor's approval for flex time until 4:19 p.m. on September 5, 2024. *Id.* ¶ 60; Doc. 105 ¶ 59. Plaintiff claims that although she left early on September 6, she worked a total of 7.5 hours, but GSD counted her as having only worked 6.75 hours. Doc. 98 ¶ 62. Plaintiff asserts that this miscalculation violated her NMMWA rights.

D.  Age Discrimination/Failure to Promote

Plaintiff applied for six higher-paying jobs at GSD, all in a one-year period beginning in August 2023 and ending in June 2024. Doc. 98 ¶ 41; Doc. 105 ¶ 41. The first job was for the role

of Construction Unit Supervisor.  Doc. 98 ¶ 42; Doc. 105 ¶ 42.  A different candidate, who scored higher during her interview and gave more detailed answers, was selected instead of Plaintiff.  *Id.*  Plaintiff next applied for the role of Purchasing Deputy Director.  Doc. 98 ¶ 44.  The hiring panel chose Ms. Martinez who "had many years more experience than Plaintiff" and was Plaintiff's direct supervisor at the time.  *Id.*; Doc. 105 ¶ 44.  Ms. Martinez's time as a supervisor was especially relevant since it was a management position.  Doc. 98 ¶ 44; Doc. 105 ¶ 44.  The third position, Procurement Specialist Bureau Chief, was given to Defendant LeBlance, who had more years of experience than Plaintiff, although she did not possess an advanced degree.  Doc. 98 ¶¶ 45–46; Doc. 105 ¶¶ 45–46.  Next, Plaintiff applied to three I.T. roles.  Plaintiff has scant background in I.T.  Doc. 98 ¶ 48; Doc. 105 ¶ 48.  The interview panel chose candidates—Ms. Sanchez, Mr. Fisher, and Ms. Wulandari—who had I.T. experience for all three positions.  Doc. 98 ¶¶ 50–55.

## DISCUSSION

I.    Plaintiff's Motion for Sanctions

The Court does not consider the dispute over the Harding deposition and GSD's VPN information in evaluating Plaintiff's sanctions motion since Magistrate Judge Khalsa denied Plaintiff's motion to compel.  Regarding the inconsistencies in some of the Defendants' deposition testimony, the Court is unpersuaded that these statements were made in bad faith.  For one, Rule 56(h) targets attorneys' conduct, not deponents.  Second, Defendants may have been confused as to whether Plaintiff's attorney was asking about telework for non-supervisors (who GSD expressly prohibits from teleworking) and supervisors (like Defendants Moya and LeBlanc).  Since Plaintiff is not a supervisor, testimony that managers may work from home has little probative value in proving that telework is a reasonable accommodation. Third, Plaintiff does not make any credible

accusations of bad faith.  She surmises that the inconsistent depositions "showcase[] a complete disregard for this Court's authority and the very meaning of a swearing an oath."  Doc. 114 at 16.  However, "such contradictions go to the weight and credibility of the evidence, not to the propriety of sanctions." *Harris*, 2025 WL 2963948, at *1.  Plaintiff can cross-examine witnesses about these statements at trial.  She has not shown that the depositions were "deliberately false and offered for an improper purpose." *Id.*  Lastly, declaratory judgment is a wholly inappropriate remedy.  Rule 56 sanctions typically result in payment of deposition or attorney's fees.  Although the court may impose "other appropriate sanctions," default judgment is "an extreme sanction appropriate only in cases of willful misconduct." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992).  Absent proof of purposeful, egregious misrepresentations, default judgment is unwarranted.  Plaintiff's motion for sanctions is denied.  Doc. 114; *Olem Shoe Corp. v. Wash. Shoe Corp.*, 591 F. App'x 873, 887 (11th Cir. 2015)

II.    Motions for Summary Judgment

A.  Failure to Accommodate

The NMHRA makes it "an unlawful discriminatory practice for . . . any employer to refuse or fail to accommodate a person's . . . serious medical condition, unless such accommodation is unreasonable or an undue hardship."  N.M. Stat. Ann. § 28-1-7.  Though Plaintiff brings her discrimination and failure to accommodate claims under the NMHRA, this Court will follow the New Mexico Supreme Court's practice, as well as the parties' briefing, and analyze them using the ADA's framework. *Latham v. Bd. of Educ. of Albuquerque Pub. Schs.*, 489 F. App'x 239, 247 (10th Cir. 2012) ("The New Mexico Supreme [Court] has looked to federal precedent in interpreting the ADA for guidance in construing NMHRA." (citing *Trujillo v. N. Rio Arriba*

*Electric Co-op, Inc.*, 41 P.3d 333, 338 (N.M. 2001)); *see, e.g.*, *Garcia v. T-Mobile*, Civ. No. 08-36 JP/RHS, 2009 WL 10696443, at \*5 (D.N.M. Jan. 9, 2009).[2]

A failure to accommodate claim under the ADA begins with the plaintiff's prima facie case, demonstrating that (1) the plaintiff is disabled; (2) she is otherwise qualified for the position; (3) she requested a plausibly reasonable accommodation; and (4) the employer refused to accommodate the plaintiff's disability. *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020); *Sanchez v. Vilsack*, 695 F.3d 1174, 1177 (10th Cir. 2012). "Once the employee produces evidence sufficient to make a facial showing on her prima facie case, the burden of production shifts to the employer to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017). An accommodation request is inherently unreasonable if it would force the employer to eliminate or alter any of a job's essential functions. *EEOC v. Picture People, Inc.*, 684 F.3d 981, 987 (10th Cir. 2012). Courts afford employers great deference in determining a job's essential functions. *Id.* This deference is not, however, limitless, as "an employer may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1192 (10th Cir. 2018). Thus, a function is not essential "simply because the employer says so." *Brown v. Austin*, 13 F.4th 1079, 1086 (10th Cir. 2021).

The parties do not dispute that Plaintiff is disabled, nor that she is otherwise qualified for her current position (which she has held for seven years). Doc. 98 at 15. They do, however, splinter on whether telework is a reasonable accommodation. In Defendants' view, full in-person

---

[2] Plaintiff has exhausted her administrative remedies as required by the NMHRA. *See* Am. Compl. ¶¶ 9–11.

attendance is an essential function of Plaintiff's job and, consequently, occasional telework is an unreasonable accommodation. Throughout their discussion of Plaintiff's failure to accommodate claim, Defendants maintain that they "are not required to permit Plaintiff to work from home as a matter of law." *Id.* at 17. Plaintiff rebuts that Defendants have shirked their duty to individually analyze Plaintiff's role and requested accommodation, opting instead to "claim that every single position at GSD must be done in person only." Doc. 105 at 23. Plaintiff highlights that she does not meet with clients in person, that meetings with her supervisor are conducted remotely, and that there is "no work she performs that can only be performed in her Santa Fe office." Doc. 105 at 26; Doc. 103, Ex. A (discussing meetings held over Zoom and Teams between Plaintiff and her supervisors). Defendants do not provide any evidence to the contrary.

The Court finds that neither party is entitled to summary judgment on Plaintiff's failure to accommodate claim. It begins by correcting a fundamental misunderstanding of law that permeates Defendants' argument regarding the telework accommodation. The confusion stems from this district court's erroneous summary of the Tenth Circuit's decision in *Punt*. *See Duffee v. T-Mobile USA, Inc.*, 1:23-cv-536 MIS/LF, 2023 WL 6391376 (D.N.M. Oct. 2, 2023). *Duffee* incorrectly stated that "the Tenth Circuit has firmly established that requests to work remotely are not, as a matter of law, reasonable accommodations." *Id.* at *5 (citing *Punt*, 862 F.3d at 1050–51). *Punt* never made that finding. What that case reiterated is the basic tenet that "an employee's request to be relieved from an essential function of her position is not, as a matter of law, a reasonable or even plausible accommodation." 29 C.F.R. § 1630.2(o); *see Picture People*, 684 F.3d at 987. Accordingly, telework is an unreasonable accommodation if the employer "has decided that physical presence at the workplace is an essential function of the position." *Punt*, 862 F.3d at 1051.

But an accommodation is always unreasonable if it asks an employer to alter or discard an essential function. *Punt*'s general acknowledgment that coming to the workplace is an essential function of many jobs does not excuse an employer from proving its veracity with regard to each employee's specific role. Indeed, courts cannot assume that telework is an unreasonable accommodation. *Unrein v. PHC-Fort Morgan, Inc.*, 993 F.3d 873, 877 (10th Cir. 2021). The employer always "bears the burden of demonstrating that a job function is essential because, after all, the employer is in the best position to do so." *Id.* As the Tenth Circuit explained over twenty years ago, "[t]he Supreme Court has generally eschewed per se rules under the ADA, and we think the determination of whether a request for an at-home accommodation is reasonable must likewise be made on a case-by-case basis." *Mason v. Avaya Commc'ns*, 357 F.3d 1114, 1124 (10th Cir. 2004). Other courts have also reached this conclusion: "full-time presence at work is not an essential function of a job simply because an employer says that it is. If it were otherwise, employers could refuse any accommodation that left an employee at work for fewer than 40 hours per week." *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018); *cf. Lincoln*, 900 F.3d at 1192.[3] Thus, *Duffee* misrepresents that telework is per se unreasonable "as a matter of law" and treats what should be a fact-intensive inquiry as a foregone conclusion.

Since Defendants cannot dismiss Plaintiff's request for intermittent telework as unreasonable as a matter of law, the Court must consider whether there is a genuine dispute of material fact. Like most disability accommodations, telework "requires a context-specific

---

[3] Defendants also cite a Fourth Circuit case for the proposition that "an employee who does not come to work cannot perform any of his job functions, essential or otherwise. Therefore, a regular and reliable level of attendance is a necessary element of most jobs." Doc. 98 at 17 (quoting *Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 213 (4th Cir. 1994)). *Tyndall* is inapplicable to the present case. First and foremost, it was written in 1994, well before the advent of advance remote work capabilities. Second, Plaintiff's attendance record is not at issue in this case. She has been working at GSD for nearly a decade and is asking for a narrow accommodation on days where she wakes up with a migraine, not full-time remote work. Any inherent problem with that arrangement is indiscernible at this stage since, according to Defendant Moya, most GSD employees can complete their essential functions remotely.

inquiry." *Yochim v. Carson*, 935 F.3d 586, 592 (7th Cir. 2019). Because finding an appropriate accommodation is often a collaborative process, "the employee and employer frequently need to share information to find a workable solution." *Ali v. Regan*, 111 F.4th 1264, 1269 (D.C. Cir. 2024). "'[I]nteractive process' is the label federal regulations and case law have given to this exchange of information, which often can facilitate the identification of an appropriate accommodation." *Id.* at 1274. "[E]ven if an employer does not engage in the interactive process, a plaintiff cannot survive summary judgment unless she can *also* show that a reasonable accommodation was possible." *Freeman v. City of Cheyenne*, No. 23-8022, 2023 WL 464069, at *3 (10th Cir. Feb. 7, 2024); *Brigham v. Frontier Airlines, Inc.*, 57 F.4th 1194, 1201 (10th Cir. 2023) ("[T]he failure to engage in an interactive process is not independently actionable under the [ADA].").

Defendants did not meaningfully engage in the interactive process with Plaintiff. They reflexively denied her request and moved on. For her part, Plaintiff has shown a genuine dispute over whether a reasonable accommodation—intermittent remote work—is possible. She performed "all of the functions of her position while teleworking from home for over 3 years." Doc. 100 at 11. Unlike in *Punt* where the plaintiff's "physical presence at the workplace was the most essential function of her job," Defendants have put on no evidence to support the claim that 100% in person attendance is an essential function of Plaintiff's job. *Punt*, 862 F.3d at 1051. Instead, Defendants underscore that in-office attendance is required of all non-manager/non-supervisor employees, including Plaintiff. But having an in-person attendance policy is not enough. After all, what the ADA requires (and what Plaintiff seeks) is an accommodation, meaning an adjustment to an employer's typical policies. Defendant Moya acknowledged that in considering Plaintiff's request, there was "no individualized assessment at all" and that "no matter

what any doctor requested for any employee, there would be no telework." Moya Dep. 90:13-17. Defendant Moya also admitted that she could not identify any essential functions of Plaintiff's that would be impossible to complete remotely. *Id.* 90:8–17. And GSD's reliance on remote work for nearly three years—which did not appear to impede the office's essential functions—makes their unyielding insistence on in-person work somewhat dubious. *Id.* 92:17–22; *cf. Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1235 (9th Cir. 2012) (finding that, in the case of a neo-natal intensive care nurse, showing up for work "really *is* essential"). GSD's claim that "determined working in the office is an essential function of Plaintiff's position" is buttressed only by their own "say so." *Brown*, 13 F.4th at 1086. At most, GSD's in-person policy provides a baseline expectation; it does not conclusively establish that the essential functions of Plaintiff's role necessitate one hundred percent in-person attendance. Moya Dep. 89:6–9. The Court finds that Defendants' mechanical application of its in-office policy, without consideration for the particularities of Plaintiff's role, to be inadequate for purposes of summary judgment. *Mason*, 357 F.3d at 1124 ("[S]ummary adjudication may be improper when the employee has presented evidence she could perform the essential functions of her position at home thereby making the at-home accommodation request at least facially reasonable."); *cf. Freeman*, 2023 WL 464069, at *6 (affirming grant of summary judgment on failure to accommodate claim where it was "undisputed that an essential function of the HR Director position was physical attendance for a minimum of forty hours per week").

    A. <u>Discrimination On the Basis of Disability</u>

    Plaintiff accuses Defendants of discriminating against her by failing to provide a reasonable accommodation.[4] As with her accommodation claim, Plaintiff asserts this claim under the

---

[4] Though Plaintiff undoubtedly argues that Defendants' failure to accommodate was discriminatory, she at times appears to also be working toward a disparate treatment claim. For instance, Plaintiff argues that "[i]t appears to be

NMHRA and the Court analyzes it under ADA precedent. The ADA bars employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Courts analyze ADA discrimination claims under the *McDonnell Douglas* burden-shifting framework, familiar to Title VII claims. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To start, the plaintiff must establish a prima facie case of disability discrimination, demonstrating (through direct or circumstantial evidence) that: (1) she has a disability; (2) she is a qualified individual under the ADA, meaning she may perform the essential functions of the job; and (3) the employer discriminated against her because of disability. *Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1266 (10th Cir. 2015).

Only the third prong is at issue in this case. Courts have interpreted "because of" to mean but-for causation, i.e. that GSD denying Plaintiff a remote work option was "by reason of" her disability (she does not need to show it was "solely by reason of" her disability). *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1313 (10th Cir. 2021). This element is "satisfied in a failure-to-accommodate claim as soon as the employer, with adequate notice of the disabled employee's request for some accommodation, fails to provide a reasonable accommodation." *Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784, 795 (10th Cir. 2020). "[O]nce plaintiffs have established their employers' failure to reasonably accommodate their disability, they need not go further and establish that they have suffered an adverse employment action." *Id.* Because failure to

---

just [her] who is not allowed to telework." Doc. 100 at 13. To whatever extent those efforts are being made, they fail. Plaintiff alleges differential treatment between herself and Defendants Moya and Leblance, who received permission to work remotely for health-related and childcare reasons, to articulate her discrimination claim. *See* Doc. 100, Ex. 10 97:14–98:4. But these Defendants are supervisors. Plaintiff is not. GSD's policy makes clear that the in-person requirement is applicable to non-supervisors/non-managers. While that does not preclude Plaintiff's failure to accommodate claim, it is detrimental to a disparate treatment claim. Here, Plaintiff's rank as a non-manager employee is what compelled GSD's decision, not her disability. *Crane*, 15 F.4th at 1313. Plaintiff has not provided any evidence that her disability motivated differential treatment from her employer.

accommodate may itself be a discriminatory act, there is a genuine dispute of material fact as to whether GSD's denial of Plaintiff's telework request was discriminatory. The Court therefore finds that neither party is entitled to summary judgment.

### B. Interference with FMLA Leave

The FMLA guarantees up to twelve weeks of unpaid leave for eligible employees of covered employers for serious health conditions. 29 U.S.C. §§ 2612(a)(1), 2614(a). An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's right to take such leave. *Id.* § 2615(a)(1). To establish an FMLA interference claim, a plaintiff must show: "(1) that [s]he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with [her] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of [her] FMLA rights." *Jones v. Denver Public Sch.*, 427 F.3d 1315, 1319 (10th Cir. 2005). An adverse action occurs when the employee is prevented from taking the full 12 weeks of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave. *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007). "[A] denial, interference, or restraint of FMLA rights is a violation regardless of the employer's intent." *Metzler v. Fed. Home Loan Bank*, 464 F.3d 1164, 1180 (10th Cir. 2006).

Plaintiff's FMLA claim fails. Plaintiff has not alleged that there were any days during 2023 or 2024 where she wanted to exercise her right to leave, but was unwilling to do so for fear of retaliation. Instead, she complains that she was "discouraged from taking leave she otherwise would have taken," but cites no specific instances where she came to work despite a migraine or MS flare. Doc. 99 ¶ 28. Nor has she argued that Defendants prevented her from taking LWOP prior to renewing her certification. For the leave Plaintiff did take, she has not presented any

evidence of an adverse consequence that resulted from her exercising her right to take FMLA leave. Though she repeatedly states that prejudice is a necessary component of an interference claim, she neglects to make such a showing in her case. *See, e.g.*, Doc. 99 at 10 (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)). While it is true that Defendants failed to certify Plaintiff's FMLA leave for approximately 2.5 months in 2023 and again improperly denied lave in 2024, Plaintiff does not dispute that an employer "may retroactively designate leave as FMLA leave with appropriate notice to the employee," so long as this retroactive designation "does not cause harm or injury to the employee." 29 C.F.R. § 825.30(j). That is what happened here. Defendants retroactively certified Plaintiff's leave as FMLA protected. Still, Plaintiff criticizes Defendants for retroactively designating her leave "without her agreement or input." Doc. 99 at 14. But the FMLA does not require the employee's agreement or input to redesignate leave. It requires notice, which Plaintiff received.

Aside from the concerns over how Plaintiff's leave was designated, the Court cannot find any evidence of a concrete injury or adverse employment action. Plaintiff used the donated leave available, as well as her paid sick leave and annual leave. Her vague and unsupported statements regarding lost wages do not contradict those facts. Doc. 99 at 12 (alleging that Defendants' interference with Plaintiff's FMLA leave "resulted in clear loss of income"). Plaintiff's remaining attempts at creating any dispute over a negative outcome from the delay in certifying Plaintiff's leave are similarly unpersuasive. Plaintiff argues that she "was threatened with potential discipline by being marked AWOL." *Id.* at 20. Of course, potential discipline is not an adverse action— discipline is. *Cf. Dick v. Phone Directories Co.*, 397 F.3d 1256, 1258 (10th Cir. 2005) (explaining that unrealized threat of termination does not constitute an adverse employment action absent highly specialized circumstances). If Plaintiff suffered some harm or injury from this process, the

record does not reveal it.  Additionally, Plaintiff's point that some employees only work four days a week and therefore "aren't doing their job from anywhere one day a week" is irrelevant to the telework claim because when Plaintiff is forced to take FMLA leave instead of teleworking, she is also not doing her job from anywhere.  The Court grants Defendants' motion for summary judgment as to the FMLA interference claim and denies Plaintiff's motion for summary judgment for the same.  *Carter v. Spirit Aerosystems, Inc.*, 827 F. App'x 864, 871 (10th Cir. 2020) (affirming dismissal of FMLA interference claim where plaintiff failed to plead any adverse action).

        C.  <u>Minimum Wage Claim</u>

Plaintiff alleges that Defendants violated the New Mexico Minimum Wage Act on September 6, 2024.  Doc. 105 at 31.  On her account, this violation occurred because she worked 7.5 hours, yet her timesheet only reflected 6.75 hours.  Plaintiff seeks recovery for the .75 uncompensated hours.  Plaintiff has not attached the time sheet to her motion, nor her response, and has not attached any pay stubs showing Plaintiff's normal rate of pay.  The purchasing agent agreement attached to Doc. 100 states that Plaintiff's salary would have been between $15.28-$26.59 per hour.  Plaintiff does not have a minimum wage claim unless her total compensation across the pay period was lower than $14.60 per hour (Santa Fe's minimum wage).  Since she is not a minimum wage employee, a violation cannot be assumed and, even if it could be, it would still require proof at the summary judgment stage.  *Presbyterian Healthcare Servs. v. Factory Mut. Ins. Co.*, 512 F. Supp. 1169, 1175 (D.N.M. 2021) ("[T]o defeat summary judgment, the nonmovant must articulate a viable legal theory.").  Plaintiff has not cited to any exhibit, deposition testimony, or other evidence to support her claim for a violation of the NM MWA.  The Court grants summary judgment to Defendants on Count V.

D.  Age Discrimination/Failure to Promote

The ADEA makes it "unlawful for an employer . . . to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  To prove a prima facie case of age discrimination, a plaintiff must show: (1) she is over forty years old (the class protected by the ADEA); (2) she suffered an adverse employment action; (3) she was qualified for the position at issue; and (4) she was treated less favorably than others not in the protected class." *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1279 (10th Cir. 2010).  "An employee alleging intentional discrimination under the ADEA must prove that age was a 'determinative factor' in the defendant employer's action toward him." *Sloan v. Boeing Co.*, 105 F.3d 669 (10th Cir. 1997) (table decision).  Plaintiff has not met that burden here.

Plaintiff fails to establish the third prong of her prima facie case under the ADEA—that she possesses "the objective qualifications necessary to perform the job at issue." *Cortez v. Wal-Mart Stores, Inc.*, 460 F.3d 1268, 1274 (10th Cir. 2006).  Plaintiff does not meaningfully contest the Defendants' hiring decision for the purchasing deputy director position nor the construction unit supervisor role.  Doc. 98 ¶¶ 42, 44; Doc. 105 ¶¶ 42, 44.  Regarding the Procurement Specialist Bureau Chief position, Plaintiff does not dispute that she lacked managerial experience.  Her only rebuttal to Defendants' version of events is that "Plaintiff has a higher education than Defendant LeBlanc."  Doc. 105 ¶ 45.  A higher education does not automatically make an individual more qualified than someone with a lower degree.  Experience matters.  Moving to the three I.T. positions, Plaintiff has no background in I.T.  Doc. 105, Ex. 1 ¶ 37 (declaration of Plaintiff stating that she "had not had the chance to work on any IT procurements").  Ms. Sanchez and Mr. Fisher

had more than ten years of experience in I.T.  Doc. 105, Ex. 15; Doc. 105, Ex. 12 at 7.[5]  Mr. Fisher had spent almost eight years as an I.T. supervisor and, before that, eight years as an I.T. specialist. Doc. 105, Ex. 12 at 2–3.  Plaintiff's conclusory, and often unsupported, statements, which lack any citation to the record, cannot overcome this uncontroverted evidence.  Claiming that "Defendants chose two less qualified, younger candidates over Plaintiff and other older applicants," with no evidence of the other candidates' ages, or that "Defendants have repeatedly hired younger candidates for their IT Procurement positions, passing over older, more educated and experienced applicants" is fruitless without some citation to the record.  Doc. 105 ¶¶ 57–58.  Plaintiff has also neglected to produce evidence insinuating that Defendants' hiring decisions were motivated by age-related bias.  *Sloan*, 105 F.3d at *5 (affirming grant of summary judgment on age discrimination claims where plaintiff did not create "a genuine issue concerning the sincerity of [the employer's] proffered reasons for failing to promote him").  The Court grants Defendants' motion for summary judgment as to Plaintiff's claim for age discrimination under the NMHRA.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment as to Counts III, IV, and V is **GRANTED**.  Defendants' motion for summary judgment as to Counts I and II is **DENIED**.  Plaintiff's partial motions for summary judgment and motion for sanctions are **DENIED**.

_____

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**

---

[5] Plaintiff does not dispute any of Defendants' facts regarding Ms. Wulandari.  Defendants state that Ms. Wulandari had "extensive experience in I.T. and I.T." while Plaintiff "had very little experience in that area."  Doc. 98 ¶ 48; Doc. 105 ¶ 48.  Since Plaintiff admits these facts, there is no dispute that GSD's choice of Ms. Wulandari was based on their difference in credentials rather than age.